## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | |
|---|---|
| ANDREW W. HAMBLIN, | No. 78144-8-I |
| Respondent-Cross Appellant, | consolidated with<br>No. 78205-3-I |
| v. | |
| LUIS CASTILLO GARCIA, | |
| Respondent, | |
| NATIONAL GENERAL<br>INSURANCE COMPANY, | PUBLISHED OPINION |
| Appellant-Cross Respondent. | FILED: May 28, 2019 |

VERELLEN, J. — Generally, insureds may pursue emotional distress damages resulting from their insurer's bad faith conduct. But if the insured assigns all bad faith claims as part of a covenant judgment settlement agreement with the injured plaintiff, equitable principles do not permit a guaranteed fixed percentage allocation of any global settlement to compensate the insured for their emotional distress. Such a guarantee risks invading the funds reasonably intended to compensate the injured plaintiff. Because Andrew Hamblin's settlement with insured tortfeasor Luis Castillo Garcia effectively guaranteed Castillo Garcia a minimum 10 percent recovery from any global settlement

reached on the bad faith claim he assigned to Hamblin, that portion of the settlement agreement was not reasonable.

When the court entered judgment based on Hamblin's settlement with Castillo Garcia, it set the postjudgment interest rate at 6.5 percent. Because settlement agreements are contracts, the court should have applied RCW 4.56.110(1) to set the interest at the settlement's agreed rate of 12 percent.

Therefore, we affirm in part, reverse in part, and remand.

FACTS

On a Saturday morning in early 2016, Luis Castillo Garcia drove with a blood-alcohol level over .18, lost control of his vehicle, and crashed into a car driven by Andrew Hamblin. Hamblin was 19. He was attending community college and working at a grocery store. A physically active and healthy young man, Hamblin's plan was to study blacksmithing. The accident left Hamblin with bilateral thoracic outlet syndrome, posttraumatic stress disorder, and anxiety. As a result, Hamblin stopped driving, stopped attending community college, and stopped working. He had two surgeries to address the thoracic outlet syndrome, although some symptoms remain unresolved.

Castillo Garcia was insured by National General Insurance Company. Hamblin initially offered to settle with National General for policy limits of $100,000, but National General counteroffered $21,000. Hamblin refused. After Hamblin filed suit against Castillo Garcia, National General appointed two attorneys to represent him. As Hamblin's medical expenses and lost earnings

increased, his requested settlement amount grew to $2 million. Because Castillo Garcia's attorneys found themselves "in a difficult position," they used a defense attorney list-serve to find an attorney with no relationship to National General to counsel Castillo Garcia.[1]

After attorney Brent Beecher began assisting Castillo Garcia in early August of 2017, Hamblin and Castillo Garcia reached a covenant judgment settlement agreement providing that Castillo Garcia stipulate to a $1.5 million judgment and assign all claims against National General to Hamblin in exchange for Hamblin agreeing not to enforce an excess judgment "against any of Castillo Garcia's assets other than his rights against his insurer."[2] The settlement also requires that any subsequent suit brought by Hamblin against National General on the assigned bad faith claims include a request for damages to compensate Castillo Garcia for emotional distress resulting from the insurer's alleged bad faith. In addition, Hamblin has the discretion to enter a global settlement with National General, but Castillo Garcia is entitled to 10 percent of the settlement amount if Hamblin agrees to the settlement without Castillo Garcia's express consent. The parties reached their settlement agreement and notified National General of the agreement's terms.

After receiving notice, National General intervened. A few months later, the court conducted a reasonableness hearing, considered arguments from the

---

[1] Clerk's Papers (CP) at 968.

[2] CP at 80, 960.

parties, and heard live testimony. The court found the settlement was reasonable and entered a covenant judgment against Castillo Garcia with a postjudgment interest rate of 6.5 percent.

National General appeals the finding of reasonableness and entry of judgment. Hamblin appeals only the postjudgment interest rate.

## ANALYSIS

Insurers have a duty to act in good faith as fiduciaries of their insured.[3] If an insurer acts in bad faith and fails to settle a claim against the insured, the insured may have a bad faith tort claim against his insurer. The insured may assign his bad faith claim to the injured party in exchange for an agreement not to execute on any asset of the insured except the insured's claims against the insurer.[4] If the amount of the settlement is reasonable, then entry of a covenant judgment based on the settlement sets the amount of the judgment as the presumptive recovery on the bad faith claim.[5]

We review reasonableness determinations made under RCW 4.22.060 for an abuse of discretion.[6] A court abuses its discretion where its decision rests on

---

[3] Tank v. State Farm Fire & Cas. Co., 105 Wn.2d 381, 385, 715 P.2d 1133 (1986) ("The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters.") (quoting RCW 48.01.030).

[4] Mut. of Enumclaw Ins. Co. v. Myong Suk Day, 197 Wn. App. 753, 756, 393 P.3d 786 (2017).

[5] Besel v. Viking Ins. Co. of Wis., 146 Wn.2d 730, 738, 49 P.3d 887 (2002); Day, 197 Wn. App. at 756-57.

[6] Bird v. Best Plumbing Grp., LLC, 175 Wn.2d 756, 774, 287 P.3d 551 (2012).

untenable grounds, was made for untenable reasons, or applies an incorrect legal standard.[7] Reasonableness hearings require factual determinations, which will be disturbed only if unsupported by substantial evidence.[8] Unchallenged findings of fact are verities on appeal.[9]

I. Whether The Settlement Amount Was Reasonable

A court must consider the nine factors in Chaussee v. Maryland Casualty Company[10] to determine if a settlement is reasonable:

> "(1) [T]he releasing party's damages; (2) the merits of the releasing party's liability theory; (3) the merits of the released party's defense theory; (4) the released party's relative fault; (5) the risks and expenses of continued litigation; (6) the released party's ability to pay; (7) any evidence of bad faith, collusion, or fraud; (8) the extent of the releasing party's investigation and preparation; and (9) the interests of the parties not being released."[11]

No single factor controls, and the trial court considers each case individually.[12]

The settling parties have the burden to prove the proposed settlement's

---

[7] Kreidler v. Cascade Nat'l Ins. Co., 179 Wn. App. 851, 866, 321 P.3d 281 (2014) (quoting Gillett v. Conner, 132 Wn. App. 818, 822, 133 P.3d 960 (2006)).

[8] Bird, 175 Wn.2d at 775.

[9] Robel v. Roundup Corp., 148 Wn.2d 35, 42, 59 P.3d 611 (2002).

[10] 60 Wn. App. 504, 803 P.2d 1339 (1991).

[11] Bird, 175 Wn.2d at 766 (quoting Mut. of Enumclaw Ins. Co. v. T&G Constr., Inc., 165 Wn.2d 255, 264, 199 P.3d 376 (2008)) (alteration in original).

[12] Id. (quoting Chaussee, 60 Wn. App. at 504).

reasonableness.[13] Once proven, the burden shifts to the party arguing the settlement resulted from collusion or fraud.[14]

First, National General argues the court erred by not properly addressing four of the nine Chaussee factors. But the court expressly stated it considered all nine factors. The court was not required to explain how it applied each factor.[15] "Absent some showing that an incorrect standard may have been applied, we do not review a trial court's reasonableness determination for a sufficient explanation, but for substantial evidence."[16] The court's findings of fact have not been adequately challenged and are verities on appeal.[17] Because National General fails to show the court applied an incorrect legal standard, the court did not abuse its discretion in how it addressed the Chaussee factors.

Second, National General contends the court abused its discretion by considering Castillo Garcia's intoxication as part of its reasonableness determination because he already admitted liability. The court explained the proposed $1.5 million settlement appeared to be a reasonable amount based, in

---

[13] Id. at 774 (citing Chaussee, 60 Wn. App. at 510).

[14] Water's Edge Homeowners Ass'n v. Water's Edge Assocs., 152 Wn. App. 572, 578, 216 P.3d 1110 (2009) (citing Besel, 146 Wn.2d at 738).

[15] Hidalgo v. Barker, 176 Wn. App. 527, 548, 309 P.3d 687 (2013); see Bird, 175 Wn.2d at 766 (courts have discretion in weighing the factors).

[16] Hidalgo, 176 Wn. App. at 548 (citing Water's Edge, 152 Wn. App. at 585).

[17] National General assigns error to "certain factual determinations" made by the trial court. Appellant's Br. at 2. Because National General does not specify which findings of fact are unsupported by substantial evidence, we treat all factual findings as verities. Robel, 148 Wn.2d at 42; see RAP 10.3(g) (requiring "[a] separate assignment of error" for each allegedly unsupported finding).

part, "on the evidence before the Court and the Court's experience" and because "[d]runk drivers are not popular with juries."[18]

Evidence is relevant where it has "any tendency" to make the existence of any material fact more or less probable.[19] Even minimally relevant evidence is admissible.[20] In this case, Castillo Garcia's intoxication arguably is related to Hamblin's theory that he suffers posttraumatic stress disorder regarding drunk drivers. It is also probative of the released party's ability to pay, one of the Chausee factors. The bankruptcy code prohibits discharge of any debt resulting from personal injuries caused by the debtor's drunk driving.[21] Because the court must consider all nine factors and evidence of intoxication is relevant to the "ability to pay" factor, the court did not abuse its discretion.[22]

---

[18] CP at 968.

[19] ER 401.

[20] Mut. of Enumclaw Ins. Co. v. Gregg Roofing, Inc., 178 Wn. App. 702, 729, 315 P.3d 1143 (2013) (citing Kappelman v. Lutz, 167 Wn.2d 1, 9, 217 P.3d 286 (2009)).

[21] 11 U.S.C. § 523(a)(9).

[22] National General contends the evidence, even if relevant, is unduly prejudicial. Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." ER 403. The Rules of Evidence favor admitting relevant evidence, so the party opposing admission bears the burden of establishing undue prejudice. Erickson v. Robert F. Kerr, M.D., P.S., Inc., 125 Wn.2d 183, 190, 883 P.2d 313 (1994). Because the court was required to consider Castillo Garcia's ability to pay and his intoxication was highly probative of that factor, we cannot say the court abused its discretion in considering it. See Colley v. Peacehealth, 177 Wn. App. 717, 732-33, 312 P.3d 989 (2013) (holding that evidence of past alcohol abuse did not outweigh probative value of central issues in the case).

National General argues, however, Hamblin and Castillo Garcia's negotiations constitute collusion as a matter of law. National General relies heavily on Water's Edge Homeowners Association v. Water's Edge Associates[23] to argue Hamblin and Castillo Garcia colluded. The Water's Edge court held a settlement between an insured and an injured plaintiff was unreasonable because the attorneys' behavior and the resultant settlement amount reflected collusive conduct and bad faith.[24] For example, the plaintiff's attorney ghost-wrote a letter for the insured to send to its insurer. The settlement also contained several unusual conditions, such as using damages from the assigned claims to refund the insureds for settlement money they already paid to the plaintiff and making the settlement binding regardless of the court's reasonableness determination.[25] National General fails to show those unusual, collusive circumstances are present here.[26] The court did not abuse its discretion by finding the settlement amount reasonable and negotiated without collusion or bad faith.

_____

[23] 152 Wn. App. 572, 216 P.3d 1110 (2009).

[24] Id. at 596-99.

[25] Id. at 595.

[26] Among other unconvincing constructions of the evidence, National General alleges Beecher identified it as Castillo Garcia's "opponent" with a position "contra" Castillo Garcia's and aligned himself with Hamblin. But these selective quotes merely show an attorney upholding his duties of loyalty and communication under the Rules of Professional Conduct. See RPC 1.4 (requiring prompt communications); RPC 1.7 (prohibiting concurrent conflicts of interest). In accordance with RPC 1.7, Beecher asked his firm to run a conflicts check when first approached about representing Castillo Garcia, and he identified the insurer as an "opponent." CP at 757. And Beecher followed RPC 1.4 when writing an e-mail in Spanish to Castillo Garcia's girlfriend so she could update him about ongoing settlement negotiations, particularly the settlement amount and Castillo

## II. Whether The Settlement's Structure Was Reasonable

Although the court concluded the settlement amount was reasonable, it expressed "grave concerns" about the agreement's "extremely distasteful" structure.[27] Those concerns are well founded. RCW 4.22.060 authorizes a proceeding in equity to determine the reasonableness of a proposed settlement.[28] The agreement's global settlement provision violates the equitable maxim "[a] person is not permitted to profit by his own wrong at the expense of another."[29] Because the entry of a reasonable covenant judgment sets the presumptive damages in an action alleging the insurer's bad faith and those damages compensate the injured party for the insured's tortious acts, the settlement underlying the covenant judgment must be structured to avoid unjustly enriching either insured or insurer.

It is well established that damages personal to the insured, such as emotional distress, are one component of an insured's damages for the tort of bad

---

Garcia assigning his rights against, or "contra," National General. CP at 762. National General also complains Beecher wrote that he "did not want to 'upset the apple cart at the reasonableness hearing.'" Appellant's Br. at 6 (citing CP at 763). Beecher used that phrase when writing an e-mail to Castillo Garcia's insurer-assigned counsel and to Hamblin's counsel while expressing his concern that failure to arrive at a successful, reasonable settlement could leave his client personally exposed to liability. CP at 763. National General's various examples of Beecher's supposed bad faith and collusion actually reflect, as National General's counsel noted, "that Mr. Beecher is doing a great job of protecting his client from a personal liability." Report of Proceedings (Nov. 1, 2017) at 24.

[27] CP at 969.

[28] Bird, 175 Wn.2d at 770.

[29] RESTATEMENT (FIRST) OF RESTITUTION § 3 (1937).

faith.[30] It is also well established that in a covenant judgment settlement agreement, an insured may assign his bad faith claims against his insurer.[31] But where the settlement agreement underlying a covenant judgment includes a minimum percentage payment to the insured from any global settlement between the insurer and the tort victim, a court must consider the potential impact upon the compensation of the victim for the insured's wrongful conduct.[32]

This settlement includes Castillo Garcia's assignment of all his bad faith claims against National General. Hamblin would control any bad faith litigation, but Castillo Garcia retained a role for himself during settlement negotiations despite his total assignment. If Castillo Garcia does not consent to Hamblin's global settlement with National General, then Hamblin must pay 10 percent of the global settlement amount to Castillo Garcia. This effectively guarantees Castillo Garcia 10 percent of the total amount of any global settlement, unless he approves a settlement that pays him less.

---

[30] See, e.g., Coventry Assocs. v. Am. States Ins. Co., 136 Wn.2d 269, 284, 961 P.2d 933 (1998) ("Because actionable bad faith is a tort, a plaintiff should not be limited to the economic damages within the contemplation of the parties at the time the contract was made."); Day, 197 Wn. App. at 767 n.37 ("[A]n insured is entitled to those damages personal to the insured that resulted from the insurer's bad faith, such as emotional distress damages."); Miller v. Kenny, 180 Wn. App. 772, 802, 325 P.3d 278 (2014) (A bad faith claimant can seek damages for "loss of interest, attorney fees and costs, financial penalties for delayed payments, and emotional distress, anxiety, and fear.").

[31] Bird, 175 Wn.2d at 766 (RCW 4.22.060 applies to reasonableness hearings on covenant judgments).

[32] See id. (courts must consider all nine Chaussee factors, including the award of damages to the injured, releasing party).

We share the trial court's concern that this settlement structure is troubling. Castillo Garcia's guaranteed payment may invade funds intended to compensate Hamblin for his full damages by reallocating a guaranteed 10 percent to Castillo Garcia, regardless of the amount of any true emotional distress damages he suffered. As the first Chaussee factor, a court must consider the releasing party's damages when considering a settlement's reasonableness.[33] And the court has broad discretion when weighing the Chaussee factors.[34] But it runs counter to established equitable principles to approve a settlement that intentionally undervalues the injured party's damages by reallocating them to the insured tortfeasor. It risks conferring a benefit on tortfeasor Castillo Garcia for his wrongdoing at the expense of injured party, Hamblin.[35] Because the global settlement provision impermissibly undercuts the first Chaussee factor and violates equitable principles, it is not reasonable.[36]

---

[33] Id. at 766.

[34] Id. at 766, 774.

[35] Because Castillo Garcia alleges National General caused his emotional distress damages, making Hamblin pay those damages out of his award would also confer an improper benefit on the insurer. See RESTATEMENT (FIRST) OF RESTITUTION § 1, cmt. b (1937) (A person "confers a benefit not only where he adds to the property of another, but also where he saves the other from expense or loss.").

[36] The settlement also requires that if the bad faith claims go to trial, Hamblin must seek emotional distress damages based on Castillo Garcia's experiences, request a line item on the jury verdict sheet for emotional distress damages, and transfer any recovered emotional distress damages to Castillo Garcia. Because the reasonableness of this separate provision to recover emotional distress damages for the benefit of Castillo Garcia has not been specifically briefed or meaningfully argued by the parties, we decline to address it.

### III. Whether The Postjudgment Interest Rate Was Correct

Hamblin argues the court applied RCW 4.56.110 incorrectly when it set the postjudgment interest rate at 6.5 percent. We review claimed errors of law de novo.[37] RCW 4.56.110 governs the interest rate for judgments. RCW 4.56.110(1) provides that judgments based on a contract accrue interest at the rate specified in the contract.[38] RCW 4.56.110(3)(b) provides that judgments based on a private person's tortious conduct accrue interest at two percentage points above the prime rate on the first business day of the month preceding the day the court entered judgment.

Settlement agreements are contracts.[39] "Once parties have agreed to settle a tort claim, the foundation for the judgment is their written contract, not the underlying allegations of tortious conduct."[40] Specifically, a settlement agreement providing for a covenant judgment with a specified interest rate supports entering postjudgment interest at the contract rate, not the interest rate applicable to the underlying tort claim.[41]

---

[37] Meadow Valley Owners Ass'n v. St. Paul Fire & Marine Ins. Co., 137 Wn. App. 810, 816, 156 P.3d 240 (2007).

[38] If the contract does not specify the rate, then the default rate is usually 12 percent. RCW 4.56.110(5); see RCW 19.52.020(1).

[39] Jackson v. Fenix Underground, Inc., 142 Wn. App. 141, 146, 173 P.3d 977 (2007).

[40] Id.

[41] Id.

Here, the settlement agreement requires that Castillo Garcia stipulate to "a judgment . . . in the form attached hereto as Appendix A."[42] The attached form provides for a 12 percent interest rate in emboldened capital letters. The court relied, however, on the tort statute, RCW 4.56.110(3)(b), to set the postjudgment interest rate. The court explained, "[T]he contract did not bind National General and liability against [it] is based on bad faith. This is the equitable resolution of the dispute."[43]

But the court entered judgment based on a contract between Hamblin and Castillo Garcia. By entering judgment based on the contract, the court found a valid agreement existed between the parties.[44] The judgment was based on that agreement regardless of the underlying tort.[45] The settlement is not based on compensation for National General's bad faith because neither Hamblin nor Castillo Garcia had filed or prevailed in a claim against National General.

Because this covenant judgment was based on a contract, RCW 4.56.110(1) controlled. Accordingly, it requires that the court set the postjudgment interest rate at 12 percent, as specified in the settlement agreement.

## CONCLUSION

Substantial evidence supports the court's conclusion that the settlement amount of $1.5 million is reasonable under the Chaussee factors. But the global

---

[42] CP at 80 (italics omitted).

[43] CP at 970.

[44] Jackson, 142 Wn. App. at 147.

[45] Id. at 146.

settlement provision risks invading and reducing Hamblin's just compensation by 10 percent to unjustly enrich the tortfeasor. At oral argument, both parties confirmed they are bound by the severability clause of the settlement agreement, which authorizes the trial court to modify the settlement agreement by striking an offending provision and affirming the reasonableness of the settlement agreement as modified. Additionally, the postjudgment interest rate must reflect the agreed rate.

Therefore, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

WE CONCUR:

Andrus, J.