## NOTICE:   SLIP OPINION
### (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISON ONE

| | |
|---|---|
| ANDREW HAMBLIN, | No. 82788-0-I |
| Respondent, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| LUIS CASTILLO GARCIA, individually, and NATIONAL GENERAL INSURANCE COMPANY, a foreign insurance company, and INTEGON PREFERRED INSURANCE COMPANY, | |
| Appellants. | |

COBURN, J. — Driver Louis Castillo Garcia T-boned a car driven by Andrew Hamblin causing long-term injuries. After Castillo Garcia's insurer, National General Insurance Company (National), declined a demand for a $100,000 coverage policy limit, Hamblin reached a $1.5 million covenant judgment settlement agreement with Castillo Garcia who agreed to assign all claims against National to Hamblin. Following trial and a judgment of more than $2.4 million, National appeals asserting the trial court erred in its award of partial summary judgment in favor of Hamblin as well as several evidentiary rulings related to whether the underlying multiple-car incident could be characterized as

Citations and pin cites are based on the Westlaw online version of the cited material

No. 82788-0-I/2

two accidents.  National also challenges the trial court's award of attorney fees and costs.  We affirm.

FACTS

On February 6, 2016, an intoxicated Castillo Garcia[1] lost control of his car. He hit the vehicle of Karen Sumner and then crashed into 19-year-old Hamblin's car.  As a result of the accident, Hamblin sustained long-term injuries requiring medical intervention.

Castillo Garcia was insured by National[2] and his policy included a $100,000 coverage limit.  In November 2016, Hamblin sent National a settlement demand letter, offering to settle his case for the policy limit of $100,000 in exchange for releasing his claims against Castillo Garcia.  The letter provided a detailed history of Hamblin's injuries with treatment and prognosis along with attached medical records and bills.  The letter explained that Hamblin had been diagnosed with bilateral Thoracic Outlet Syndrome, that surgery was in the near future, and that physical therapy treatment had been discontinued until after surgery.  The letter explained that Hamblin's medical bills through August 10, 2016 totaled $16,731.80 and would significantly increase with additional treatment and surgery.  Without reading the demand letter, National rejected the offer, and instead made a counteroffer for $21,000, which Hamblin rejected.

---

[1] We refer to the insured as "Castillo Garcia" instead of just "Garcia," consistent with his attorney's reference to his client.

[2] Our reference to National also includes Integon Preferred Insurance Company, and we do not delineate between these entities.  Integon Preferred was National's underwriting company.  Below, National told the trial court to refer to the two insurance companies as National General and the court explained to the jury that the companies were "the same entity for trial purposes."

No. 82788-0-I/3

In December 2016, Hamblin filed a negligence complaint against Castillo Garcia for his personal injuries. Hamblin's attorney indicated that he intended to seek a $2 million judgment. "Because Castillo Garcia's attorneys found themselves 'in a difficult position,' they used a defense attorney LISTSERV to find an attorney with no relationship to National to counsel Castillo Garcia." Hamblin v. Castillo Garcia, 9 Wn. App. 2d 78, 83, 441 P.3d 1283 (2019). Brent Beecher began assisting Castillo Garcia in early August 2017. Id. In September 2017, Hamblin and Castillo Garcia reached a covenant judgment settlement agreement providing that Castillo Garcia stipulate to a $1.5 million judgment and assign all claims against National to Hamblin in exchange for Hamblin agreeing not to enforce an excess judgment "against any of Castillo Garcia's assets other than his rights against his insurer(s)." Id.

The parties notified National of their settlement agreement. National intervened. Following a reasonableness hearing, superior court found the settlement reasonable.[3] The court found that given the extent and expense of Hamblin's injuries, it was "entirely possible that a jury would return a verdict [for $1.5 million] if not higher. Drunk drivers are not popular with juries." The court entered a judgment against Castillo Garcia for $1.5 million.

---

[3] Courts apply the Chaussee factors to determine if a settlement is reasonable, Chaussee v. Maryland Cas. Co., 60 Wn. App. 504, 803 P.2d 1339 (1991), which include: "[T]he releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults; the risks and expenses of continued litigation; the released person's ability to pay; any evidence of bad faith, collusion, or fraud; the extent of the releasing person's investigation and preparation of the case; and the interests of the parties not being released." Id. at 512 (quoting Glover for Cobb v. Tacoma Gen. Hosp., 98 Wn.2d 708, 717, 658 P.2d 1230 (1983)).

No. 82788-0-I/4

National appealed the superior court's finding of reasonableness and entry of judgment.  This court affirmed the finding that the $1.5 million settlement amount was reasonable and that the settlement was negotiated without bad faith or collusion.  Hamblin, 9 Wn. App. 2d at 88.[4]

In March 2020, Hamblin filed an amended complaint for damages and declaratory relief against National and Castillo Garcia.  Hamblin alleged that National engaged in negligence, breach of contract, breach of good faith duty, breach of the Consumer Protection Act (CPA), and breach of regulatory and statutory duties including the Insurance Fair Conduct Act (IFCA).  Hamblin also asserted that the $1.5 million covenant judgment was the presumed damages applicable to the case.  Hamblin also asked for attorney fees and costs permitted under Olympic S.S. Co., Inc. v. Centennial Ins. Co., 117 Wn.2d 37, 811 P.2d 673 (1991), the CPA, IFCA, and "other applicable law."

In February 2021, Hamblin filed a motion for partial summary judgment regarding damages, arguing that if National was found to have acted in bad faith, the covenant judgment set the floor on the damages the jury could award at trial.  National responded, arguing that the covenant judgment set a rebuttable presumption of harm, and "[o]ne such way of rebutting the presumption of damages and/or harm is to show that Mr. Castillo-Garcia was not harmed to the extent being claimed."  National focused its argument on challenging Hamblin's

---

[4] We also held that a severable global settlement provision awarding Castillo Garcia 10 percent of the total settlement was unreasonable and that the assigned post-judgment interest rate was incorrect.  Hamblin, 9 Wn. App. at 88-92.  In September 2019, the superior court issued an amended order consistent with our ruling.

4

contention that the $1.5 million covenant judgment set the floor, not the ceiling for damages. During oral argument, the court asked National to clarify whether it was adding another element: harm suffered by Hamblin. National clarified that it was not and explained that "[b]ecause the issue for this jury in this matter will be if there was bad faith, how much harm did National General cause to Mr. Castillo Garcia. Mr. Hamblin as the assignee is entitled to collect those amounts." National did not dispute that the covenant judgment established a presumption of harm, but nevertheless it did not respond to the summary judgment motion by presenting any evidence on how it would attempt to rebut that presumption.

The trial court granted Hamblin's motion for partial summary judgment. The court concluded that the $1.5 million judgment established the minimum amount of damages the jury could award if it found National acted in bad faith. The parties proceeded to trial.

One issue at trial was whether Castillo Garcia caused one or two accidents. The parties did not dispute that the policy limited liability coverage to a $100,000 combined single limit for both bodily injury and property damage "for each person injured in any one accident." National contended that the incident was a single accident that involved two vehicles so the full policy limit of $100,000 was not available to Hamblin as $625.90 had already been distributed to Sumner. Hamblin argued that National failed to exercise good faith in investigating and treating the incident as two accidents. The investigating officer's report included a diagram and narrative of what happened based on witness interviews. According to the report, Castillo Garcia was third in a line of

stopped vehicles in a left-turn lane at an intersection with a red light. The vehicle driven by Sumner was directly in front of Castillo Garcia when he suddenly went left of center, striking the rear of Sumner's vehicle, before accelerating and passing the other stopped vehicle in his lane, and entered the intersection while the light was still red. Castillo Garcia struck the side of Hamblin's vehicle which was going through the intersection with a green light. Neither the officer, Castillo Garcia, Hamblin nor any witnesses to the incident testified at trial.

As a motion in limine, National asked the trial court to exclude the police report because it was not a business record, "irrelevant," "prejudicial," "hearsay," and its admission was prohibited by RCW 46.52.080. The trial court denied the motion. The court accepted Hamblin's proffer that it was not offering the report for the truth of the matter asserted but offered as National's business records to establish what it knew at the time it made its decisions on Hamblin's claim. The court denied National's motion but announced it would provide a limiting instruction to address the hearsay issue when the report was offered.[5]

National also moved in limine to preclude Hamblin from asserting that there was more than "one [car] accident." The court concluded that the question of whether the incident constituted one or two accidents was a question of fact and denied National's motion in so far as Hamblin should be given "the chance to present."

---

[5] Prior to the court's ruling, the parties asked the court to clarify whether the court's ruling, if it was excluding the police report, extended to information from it that became part of National's claim file. The court stated, "I don't think there's any question that the claim file is a business record." National does not challenge the admission of exhibits or portions of the claim file as business records.

At trial, Hamblin questioned National's corporate representative, claims manager Bradley Gibbs. During the questioning of Gibbs, Hamblin entered the police report into evidence. Gibbs acknowledged that the police report was in the company's claim file for Castillo Garcia and that National had reviewed it. Hamblin went through the police report narrative in detail with Gibbs.

After National reminded the court about the limiting instruction, the court instructed the jury:

> The police report contains hearsay, which means that neither the police officer who made the report or persons who gave statements to the officer are making their statements in the courtroom. Hearsay evidence often is not admissible. In this case, however, the report is admissible not to establish the truth of matters asserted in the report, but to show that Defendant National General received the report when it was received and to inform actions Plaintiff contends Defendant did or did not take based on information the report contains.

Hamblin also questioned Gibbs about the company's claim notes from March 2016 that indicated National received and reviewed the police report and that the narrative stated Castillo Garcia struck a vehicle in the rear, "then went left of center into intersection, running red light," and then struck another vehicle. Later Hamblin successfully moved to admit Exhibit 34 and asked Gibbs about his notes in that exhibit. Gibbs confirmed that the note was his description of the accident:

> Mr. Castillo Garcia had fallen asleep at the wheel before waking up and accelerated. He was stopped in the left turn lane at the intersection of 148th Northeast and Northeast 20th Street. He then accelerated, causing a minor rear-end collision to the left corner of the vehicle ahead of him before proceeding left of center straight into the intersection, causing a T-bone collision with the claimant vehicle on the claimant's passenger side.

National did not make a hearsay objection or request a limiting instruction.[6]

Gibbs also testified that he was not aware of National agents or its counsel performing any analysis of Washington State law on what constitutes separate accidents.

At trial, Hamblin also introduced testimony from his insurance industry expert, Robert Dietz. In preparation for trial, Dietz reviewed National's claim file and previous testimony from National employees. Hamblin asked Dietz about the issue of two accidents:

> Q. Did you see any evidence in the claim file that National General considered whether there were two accidents here, rather than one accident?
>
> A. There's nothing in the claim file that addresses that.
>
> Q. Did National General have an obligation to investigate[?]
>
> A. Well, given the facts of the accident here, as I understand it – and I don't know that it's refuted – Mr. Garcia hit another car that was parked on the road in the rear, I guess, and then from there crossed over through an intersection, missed another vehicle, and then hit Mr. Hamblin's vehicle.
> So then – then we consider, well, all right, was that one occurrence, one incident, or two? Because if it's two incidences, two occurrences, Mr. Garcia's policy would allow a hundred thousand dollars times two.
>
> Q. Would it be a hundred thousand on each accident?
>
> A. Correct.

National did not object to this testimony.

---

[6] The court overruled National's "ongoing objection" to admitting Exhibit 34. The record indicates that the standing objection related to National's motion in limine that Hamblin should be precluded from offering any evidence of conduct by National that occurred outside what National describes as a 30-day policy limits demand. National does not assign error to the court's denial of this motion in limine.

No. 82788-0-I/9

During cross-examination, National asked Dietz about the characterization that there were two accidents:

> Q. Did you review any Washington law before you gave your opinion on there being a potential for two accidents?
>
> A. Yes. I'm familiar with the Greengo v. PEMCO case.
>
> Q. And doesn't that decision stand for the proposition if you look whether or not there's been a difference in time of the two events?
>
> A. Yeah. It has to do with basically whether or not there's a broken chain of events.
>
> Q. And there was no evidence in this case that there was a broken chain of events between Mr. Castillo Garcia striking the first car and striking Mr. Hamblin's vehicle; isn't that correct?
>
> A. I don't agree with you. No.
>
> Q. Okay. Did the police agree with me?
>
> A. Well, the police are hearsay to begin with.
> I know what the facts are. And the facts are he hit a car, then he – then he accelerated through an intersection, passed another vehicle, and then crossed the – crossed over the center line and hit Mr. Hamblin.
> And by way of example, let's just say he keeps driving for another 30 minutes. Is that still the same occurrence as he's hitting many other cars? The point I'm making, sir, is there was no analysis, there was no thought process to that at all.
>
> Q. I think you just made my point. If he had traveled a half an hour down the road, that might be a second accident; would you agree with me?
>
> A. Well, I – I agree that I thought there likely could be two occurrences in this one.
>
> Q. Okay.
>
> A. Which is why the insurance company's job is to seek, find, analyze coverage for the benefit of the insured.

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

National later asked Dietz where he got the information about the accident:

> Q. All of your understanding about what occurred in this accident, where did you get that information from?
>
> A. From the claims file.
>
> Q. And is the claims file reflecting what is in the police report?
>
> A. I don't know. It may.

National then questioned Dietz's earlier description on direct that Castillo Garcia struck a "parked" car in reference to the vehicle driven by Sumner:

> Q. Could you perhaps be mistaken about your understanding of what occurred in the accident?
>
> A. Well, only to the extent that either the parked car was parked or not parked. But the fact of the matter is, is there were two impacts, and they occurred over a period of time.

National did not object, move to strike or request a limiting instruction. On redirect, Dietz was asked to read out loud the narrative from the police report to refresh his memory that the vehicle driven by Sumner was in the turn lane and was not parked. National did not object. Hamblin then asked Dietz to opine on what he viewed as the proximate cause of the two vehicle impacts. National objected noting that Dietz was not qualified as an accident reconstruction expert. After the court sustained the objection, Hamblin clarified that he was asking Dietz based on "his experience as a claims professional evaluating information that is provided to claims professionals as part of the claim file." Over National's objection, the court allowed the testimony "on the basis of Mr. Dietz being an expert claims adjustor" and "based on his experience in that capacity." Dietz then testified that the cause of the impact to Sumner's vehicle was a "rear-end

impact." He then described the impact to Hamblin's vehicle as "that's a whole separate incident there . . . that is a T-bone accident in the middle of an intersection that follows the initial incident involving the rear-end car."

During closing argument, Hamblin argued,

> We all know what happened. This comes from the police report, which we know has been objected to as hearsay. And that's fair. But you'll see as we go through this that National General adopted this description as the description of the accident. So whether it was hearsay or not, they chose to rely on this description. And all of their witnesses agreed that they did this.
>     And so Mr. Castillo Garcia hit the back of the Sumner vehicle. He went to the left. He accelerated, went into the intersection and blasted Andrew Hamblin broadside in the intersection. That's two accidents. The cause of the first accident was stopping behind Ms. Sumner and then hitting her car. The cause of the second accident where Mr. Hamblin was not yet injured, there was a new accident later on where Mr. Castillo accelerated towards the intersection, ran the red light and hit Andrew Hamblin's vehicle. . . .
>     So how did National treat this accident? This is from National's claim notes. Luis Castillo Garcia was stopped at the intersection behind the vehicle driven by Karen Sumner. He accelerated, striking the rear of the Sumner vehicle. We know from the diagram he then went around her to the left. He then accelerated towards the intersection, ran the red light, and broadsided the Hamblin vehicle. That's two $100,000 limits.

National did not object.

The court instructed the jury that Hamblin and Castillo Garcia had previously reached an agreed settlement of $1.5 million in damages to Hamblin as a result of injuries caused by the underlying vehicle collision. The jury also was told that National had participated in an evidentiary hearing in which the court found the agreed settlement reasonable and negotiated without collusion or bad faith and that National had placed $99,374.10 in the registry of the court toward payment of that judgment. In its measure of damages, the court

11

No. 82788-0-I/12

instructed the jury that it "may consider the value of the underlying judgment entered against Mr. Castillo Garcia in the amount of $1,500,000."

The jury returned its verdict. It concluded that National (1) failed to act in good faith; (2) did not violate the Insurance Fair Conduct Act; (3) violated the Consumer Protection Act; (4) engaged in negligence, and (5) breached its contract. The jury was asked to assign damages to claims 2 through 5, to which they awarded damages only for the breach of contract claim in the amount of $3,027.[7] Prior to the verdict, Hamblin indicated to the court and National that he would not seek anything above the $1.5 million covenant judgment regardless of the damages awarded by the jury.

The court entered the principal judgment against National in the amount of $1,400,627.90[8] with interest owed in the amount of $546,685.16. Hamblin also filed a motion for attorney fees and costs for both his counsel's firm, Helsell Fetterman LLP, and Beecher's firm, Hackett Beecher & Hart. Hamblin asserted several bases for the fees: Olympic, the CPA, and RCW 48.30.15(3) and (5). Hamblin requested attorney fees and costs totaling $683,827.54 to Helsell Fetterman LLP and $52,892.27 to Hackett Beecher & Hart.

National filed a response arguing the court should deny the attorney fee and cost request. National argued the request was "replete with block billing, duplicative work and excessive time." National contended that the reasonable attorney fees were significantly lower than the amount requested, that the hourly

---

[7] Castillo Garcia's 12-month premium was $3,027.
[8] This was the balance after subtracting National's previous payment of $99,374.10 in the court registry.

12

rate of the plaintiff's attorneys was unreasonable, that the court should deny the use of a multiplier, and that Beecher, Castillo Garcia's personal counsel, should be denied all fees. National claimed that some time entries lacked specificity and that the charges included work done on unsuccessful claims, and duplicative or excessive work. National also asserted that Hamblin failed to set forth any awardable costs under RCW 4.84.010.

The trial court granted the motion for fees and costs with some reductions. The court entered several findings of fact including the hourly rates billed for all attorneys and staff was "reasonable," noting that the two partner-level attorneys who had the highest hourly rate had "considerable experience and skills in the matters required in this case." The court specifically noted,

> In making the lodestar award, the Court has relied upon its extensive familiarity with this case and has considered the factors set forth under RPC 1.5(a), including (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the fee customarily charged in Seattle for similar legal services; (3) the amount involved and the results obtained; (4) the experience, reputation, and ability of Plaintiff's counsel; and (5) the contingent nature of the fee. Additionally, the Court considered the discovery complexity and multiple motions, hearings, and proceedings limiting other work and the efforts to avoid any wasteful or duplicative time.

The court also made the following findings:

6. Plaintiff was successful in his bad faith and breach of contract claims, all of which shared a common core of facts and circumstances with Plaintiffs other interrelated claims;

7. Plaintiffs IFCA claim also shares a common core of facts and circumstances with his other claims, but Plaintiff has removed attorney hours spent on solely the IFCA claim;

8. Plaintiff has been conservative in presentation of the attorney hours spent on this case, and has taken reasonable steps to avoid and

13

reduce claims that might involve duplicative, non-productive or wasteful matters;

9. The hours awarded and summarized as set out in the Kinstler[9] and Beecher declarations, which are incorporated herein, are reasonable and necessarily incurred for the successful resolution on each of the interrelated causes of action;

10. The expenses and costs summarized on in the Kinstler and Beecher declarations, incorporated herein, are reasonable and necessarily incurred for the successful resolution of the bad faith, contract and other intertwined cause of action;

The trial court rejected Hamblin's request to apply a 1.5 multiplier. Aside from rejecting the multiplier, the trial court otherwise granted the motion for attorney fees of $472,915.50 and costs of $35,635.56, as requested. The final amended judgment totaled $2,455,864.

National appeals.

## DISCUSSION

### Motion for Partial Summary Judgment

National argues that the trial court erred by granting Hamblin's motion for partial summary judgment because it precluded the company from rebutting the presumption of harm at trial and removed from the jury the question of whether National's conduct caused harm to Castillo Garcia. We disagree.

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Int'l Marine Underwriters v. ABCD Marine, LLC, 179 Wn.2d 274, 281, 313 P.3d 395 (2013). Conclusory statements of fact are insufficient to defeat a summary judgment

---

[9] Attorney Andrew Kinstler of Helsell Fetterman, LLP represented Hamblin.

14

motion. Overton v. Consol. Ins. Co., 145 Wn.2d 417, 430, 38 P.3d 322 (2002). A court may award judgment "if the if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." CR 56(c). We review summary judgment decisions de novo. Mut. of Enumclaw Ins. Co. v. Dan Paulson Const., Inc., 161 Wn.2d 903, 914, 169 P.3d 1 (2007).

Where an insurer violates its duty to act in good faith and fails to settle a claim against its insured, the insured is entitled to assign its bad faith claim to an injured party. Hamblin, 9 Wn. App. 2d at 84. If a court determines a covenant judgment between an insured and an injured party is reasonable, the judgment amount sets the presumptive recovery on a bad faith claim. Id. The insurer becomes liable for the settlement amount, even if the amount exceeds the contractual policy limits. Besel v. Viking Ins. Co. of Wisconsin, 146 Wn.2d 730, 735-36, 49 P.3d 887 (2002).

Where an insured meets the burden to show an insurer acted with bad faith, the court imposes a presumption of harm. Safeco Ins. Co. of Am. v. Butler, 118 Wn.2d 383, 390, 823 P.2d 499 (1992). Though the covenant judgment may insulate an insured from liability, the judgment "constitutes a real harm because of the potential effect on the insured's credit rating . . . [and] damage to reputation and loss of business opportunities[.]" Id. at 399 (quoting Barr v. Gen. Accident Grp. Ins. Co. of N. Am., 360 Pa. Super. 334, 342, 520 A.2d 485 (1987)). The presumption of harm is rebuttable, but the insurer carries the burden to "prove its acts did not prejudice the insured." Id. at 392. While this may be an

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

"almost impossible burden" for the insurer, "[a]s between the insured and the insurer, it is the insurer that controls whether it acts in good faith or bad. Therefore, it is the insurer that appropriately bears the burden of proof with respect to the consequences of that conduct." Mut. of Enumclaw Ins. Co., 161 Wn.2d at 921.

National asserts that it was improper for the trial court to rule on Hamblin's partial summary judgment motion for damages because it was entitled to rebut the presumption of harm at the time of trial. National is incorrect.

National focuses most of its briefing on arguing that our decision in Miller v. Kenny—holding that the amount of a reasonable covenant judgment sets a floor on the damages a jury may award in an insurance bad faith case—was limited to that case because the insurer agreed to the amount of damages and did not appeal the granting of summary judgment. Miller v. Kenny, 180 Wn. App. 772, 782, 325 P.3d 278 (2014). Miller, however, is not the only case that held a reasonable covenant judgment sets the presumptive measure of damages on a bad faith claim. See Hamblin, 9 Wn. App. 2d at 84; Bird v. Best Plumbing Grp., LLC, 175 Wn.2d 756, 771-72, 287 P.3d 551 (2012) (holding that a reasonable covenant judgment establishes the presumptive measure of damages against the insured in a subsequent bad faith action and that there is no constitutional right to have that amount re-decided by a jury); Besel 146 Wn.2d at 736 (holding that a covenant judgment provides a presumptive measure of the insured's harm); Gosney v. Fireman's Fund Ins. Co., 3 Wn. App. 2d 828, 855, 419 P.3d 447 (2018) (following Bird and Miller in recognizing that the role of the jury is to make

a factual determination of an insured's bad faith damages other than and in addition to the covenant judgment).

Despite its contention otherwise, nothing prevented National from rebutting the presumption of harm. It was simply required to establish that it could do so by responding to Hamblin's summary judgment motion as to that issue. At the summary judgment hearing, National offered nothing to rebut the presumption of harm against Castillo Garcia. National could not point to any evidence that the $1.5 million outstanding judgment against its insured did not harm or prejudice him.

The trial court properly granted Hamblin's motion for partial summary judgment because National did not raise any genuine issue of material fact as to whether the covenant judgment harmed Castillo Garcia if the jury found National acted in bad faith.

<u>Admission of Police Report</u>

National contends that the trial court abused its discretion by admitting the police report into evidence, in violation of RCW 46.52.080 and evidentiary rules against hearsay. We review a trial court's decision to admit evidence for an abuse of discretion. <u>Salas v. Hi-Tech Erectors</u>, 168 Wn.2d 664, 668, 230 P.3d 583 (2010). A trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds or reasons. <u>Id.</u> at 668-69. A trial court's decision is manifestly unreasonable if it adopts a view no reasonable

No. 82788-0-I/18

person would take.  Id. at 669.

*A.  RCW 46.52.080*

National contends that RCW 46.52.080 precludes the admission of police

reports in civil cases and because the trial court admitted such evidence, it is

now entitled to a new trial.  We disagree.

RCW 46.52.080 states that

> All required accident reports . . . shall be without prejudice to
> the individual so reporting . . . . No such accident report or copy
> thereof shall be used as evidence in any trial, civil or criminal,
> arising out of an accident . . . .

We have previously held that RCW 46.52.080 protects the confidentiality of

reports "made by persons involved in an accident."  Superior Asphalt & Concrete

Co. v. Dep't of Lab. & Indus., 19 Wn. App. 800, 806, 578 P.2d 59 (1978).

These "accident reports" created by individuals—who have a duty to make

an accident report pursuant to RCW 46.52.030[10]—are separate and distinct from

accident reports created by police under RCW 46.52.070.[11]

Our state Supreme Court has recognized this distinction.  Guillen v. Pierce

County, 144 Wn.2d 696, 713-15, 31 P.3d 628, 34 P.3d 1218 (2001)

---

[10] "Accident reports. (1) Unless a report is to be made by a law enforcement officer under subsection (3) of this section, the driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to the property of any one person to an apparent extent equal to or greater than the minimum amount established by rule adopted by the chief of the Washington state patrol in accordance with subsection (5) of this section, shall, within four days after such accident, make a written report of such accident[.]"

[11] "Police officer's report.  (1) Any police officer of the state of Washington or of any county, city, town, or other political subdivision, present at the scene of any accident or in possession of any facts concerning any accident whether by way of official investigation or otherwise shall make report thereof in the same manner as required of the parties to such accident and as fully as the facts in his or her possession concerning such accident will permit."

18

(acknowledging that "accident reports and supplemental reports" in RCW 46.52.080 refers to reports prepared pursuant to RCW 46.52.030(1) or .040 by persons involved in the accidents, not to official "police officer's reports" or "investigator's reports" prepared pursuant to RCW 46.52.030(3) or .070), rev'd in part on other grounds, 537 U.S. 129, 123 S. Ct. 720, 154 L. Ed. 2d 610 (2003).

We reject National's contention that the trial court violated RCW 46.52.080 by admitting the police report for a purpose other than for the truth of the matter asserted.

*B. Hearsay and limiting instruction*

National next asserts that the trial court abused its discretion by admitting the police report because it contained hearsay. We disagree.

Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Hearsay is inadmissible unless a specific exception applies. ER 802. A statement is not hearsay, however, where if a party offers evidence for a purpose other than to prove the truth of the matter asserted. Ang v. Martin, 118 Wn. App. 553, 561, 76 P.3d 787 (2003). To determine whether an out-of-court statement is offered for a non-hearsay purpose, we examine whether the purpose was relevant. Bengtsson v. Sunnyworld Int'l, Inc., 14 Wn. App. 2d 91, 102, 469 P.3d 339 (2020).

The trial court denied National's motion to exclude the police report because it ruled the evidence was admissible for a non-hearsay purpose to show

what National did and did not do when it had the information in the police report.

Hamblin argued, among other bases, that National's failure to properly investigate the claim violated the minimum standards of conduct for insurance companies and constituted bad faith, which in turn supported each of Hamblin's claims. Castillo Garcia initially reported that he fell asleep at the wheel, rear-ended a car, and that car pushed into another car. This version was completely contradicted by the police report. Whether the incident involved one accident or two accidents determined whether the policy limit that applied to Hamblin and Sumner totaled $100,000 or was $100,000 each. National received the police report in March of 2016 but maintained up through trial that only one accident occurred. The fact that National was aware that the police report contradicted Castillo Garcia's version of events was relevant to Hamblin's theory of the case.

National did not object to the trial court's limiting instruction and even reminded the court to give the limiting instruction. The court admitted the police report while instructing the jury that it is not to establish the truth of matters asserted in the report but to show that National received the report when it was received and to inform actions Hamblin contends National did or did not take based on information the report contained. Though National argues that the jury improperly considered whether the police report was "truthful," we presume jurors follow the court's instructions. Terrell v. Hamilton, 190 Wn. App. 489, 504, 358 P.3d 453 (2015).

The trial court did not abuse its discretion by admitting the police report

20

No. 82788-0-I/21

with the limiting instructions.

Admission of Evidence Regarding Two Accidents

National contends that the trial court abused its discretion to allow Hamblin to argue that there were two accidents. National maintains that the court should have ruled there was one accident, as a matter of law, and that the trial court erred by allowing Hamblin's expert Dietz to testify that there were two accidents and by allowing Hamblin to argue the same in closing. We disagree.

Washington State follows the "cause theory" to determine whether two collisions are considered two "accidents" for insurance purposes:

> Under our approach if each accident, collision, or injury has its own proximate cause then each will be deemed a separate "accident" for insurance policy purposes even if the two accidents occurred coincident, or nearly coincident, in time. . . . If, however, the collisions or injuries were all caused by a single, uninterrupted proximate cause, then the multiple collisions or injuries will be deemed a single accident.

Greengo v. Pub. Emps. Mut. Ins. Co., 135 Wn.2d 799, 813-14, 959 P.2d 657 (1998). "Proximate cause is generally a fact question for the jury, but if reasonable minds could not differ, these factual questions may be determined as a matter of law." Meyers v. Ferndale Sch. Dist., 197 Wn.2d 281, 289, 481 P.3d 1084 (2021).

The trial court denied National's pretrial request to prevent Hamblin from arguing that there was more than one car accident because Hamblin presented the issue as a "legitimate question of fact." The jury trial right guarantees the right to have a jury "resolve questions of disputed material fact." Schuck v. Beck, 19 Wn. App. 2d 465, 519, 497 P.3d 395 (2021).

21

The trial court was correct in concluding that the question of whether the incident constituted one or two accidents was a question of fact appropriately submitted to the jury.

*A. Dietz' testimony regarding two accidents*

National further contends that the trial court abused its discretion by permitting Hamblin's insurance expert Dietz to testify that there were two accidents.  We disagree.

During direct, Dietz did not testify that there were two accidents, he merely testified that "[G]iven the facts of the accident here . . . we consider . . . was that one occurrence, one incident, or two?  Because *if it's two incidences*, two occurrences, Mr. Garcia's policy would allow a hundred thousand dollars times two."  (Emphasis added.)  It was National that asked Dietz specifically whether there were two accidents by attempting to get Dietz to agree with National's counsel that there was no broken chain of events between Castillo Garcia striking the first car and striking Hamblin's car.  Dietz responded that he disagreed.  Dietz further testified on cross that there were "two impacts" and they "occurred over a period of time."  This was a non-responsive answer to National asking him about his belief that Castillo Garcia had hit a parked car.  But National did not move to strike the non-responsive answer.

National contends that Dietz was not an accident reconstruction expert, and his testimony should have been limited by precluding him from offering opinions which were ostensibly accident reconstruction testimony that there were two accidents.  National argues that the inadmissible police report allowed Dietz

to opine that there were two accidents and National acted in bad faith which prejudiced National.

"Error may not be predicated upon a ruling which admits . . . evidence unless a substantial right of the party is affected, and . . . a timely objection or motion to strike is made." ER 103(a)-(1); Faust v. Albertson, 167 Wn.2d 531, 547, 222 P.3d 1208 (2009).

First, National waived any claim as to Dietz's non-responsive statement during cross that "there were two impacts and they occurred over a period of time" and Dietz's reading of the narrative of the police report on redirect because National failed to object to both those instances.

Second, the trial court did not abuse its discretion in allowing Dietz to testify that the second impact was "a whole separate incident" as proper expert opinion.

Evidence rules permit expert witnesses to form opinions based on otherwise inadmissible evidence so long as the facts are the type reasonably relied on by experts in that field. ER 703; Deep Water Brewing, LLC v. Fairway Res. Ltd., 152 Wn. App. 229, 275, 215 P.3d 990 (2009). National does not challenge the trial court's finding that Dietz was an expert claims adjustor and testified based on his experience in that capacity.

Furthermore, National's failure to investigate for two accidents was not the only basis for Dietz to opine that National acted in bad faith. Dietz also testified that it was inconsistent with industry standards for National to delegate the obligation to resolve a claim to the injured party and that the company failed to

meet the standard of "conducting a prompt and reasonable investigation," in part, by not reading the demand letter and not conducting an independent investigation of the medical facts of Hamblin's injury. Dietz stated that National's offer of $21,000 to settle Hamblin's claim did not meet the standard of a "competent, thorough review of the claims presented." He also concluded that National did not make a good faith effort to settle Castillo Garcia's claim once it understood the company was liable. Dietz also testified that the person responding to Hamblin's claims at National was handling too many claims at one time.

The trial court did not abuse its discretion by permitting Dietz to testify in his expert capacity.

Even if Dietz's testimony as to the two accidents was improper, any error was harmless because Hamblin established several other bases to support its claim that National acted in bad faith that were not predicated on whether the incident involved one or two accidents.

B.  *Hamblin's reference to two accidents during closing argument*

National also takes issue with Hamblin's arguing two accidents in closing. But National did not object to the challenged arguments.

Details of Castillo Garcia's car accident were admitted into the record through Gibbs who testified about his own notes in National's claim file. National did not object to Gibbs' testimony or the admission of his notes in the claim file. Through Gibbs' testimony, the jury heard that Castillo Garcia was stopped and then struck the car ahead of him causing a minor rear-end collision to the left

corner before proceeding left of center straight into the intersection, causing a T-bone collision with Hamblin.

In closing, Hamblin reminded the jury that in referring to the police report, it had been objected to as hearsay, "[a]nd that's fair." Hamblin also spoke of the police report in the context of National adopting the police report's description as their own description of the accident. The second time Hamblin described the accident, he clarified that it was from National's claim notes.

An attorney has wide latitude to make reasonable inferences from the evidence during closing argument. M.R.B. v. Puyallup Sch. Dist., 169 Wn. App. 837, 860, 282 P.3d 1124 (2012). Hamblin argued a reasonable inference that National relied on the police report about the accident.

<u>Attorney Fees and Costs</u>

National challenges the trial court's award of attorney fees on several grounds and asks that this court deny Hamblin's request for fees on appeal.

We review a trial court's legal basis for awarding attorney fees de novo, and we review the decision to award attorney fees and whether such fees are reasonable for an abuse of discretion. Cook v. Brateng, 180 Wn. App. 368, 375, 321 P.3d 1255 (2014). The party seeking fees bears the burden to show the fees are reasonable. Berryman v. Metcalf, 177 Wn. App 644, 657, 312 P.3d 745 (2013).

25

*A. Applicability of Olympic*

The trial court based its authority to award attorney fees under Olympic, 117 Wn.2d 37. National argues that Hamblin was not entitled to attorney fees under Olympic, because there was "never a coverage dispute." We disagree.

Trial courts may award a party attorney fees and costs when authorized to do so by a contract, statute, or a recognized ground in equity. Berryman, 177 Wn. App at 656. The Washington State Supreme Court recognized the right of an insured party to recover its attorney fees where an insurer "refuses to defend or pay the justified action or claim of the insured." Olympic, 117 Wn.2d at 52. Olympic authorizes an award of attorney fees related to claims of *coverage* rather than the *value* of the claim. Woo v. Fireman's Fund Ins. Co., 150 Wn. App. 158, 175-76, 208 P.3d 557 (2009). Coverage disputes include issues regarding the "application of an insurance policy" or the "scope" or "extent of the benefit" in an insurance contract. Colorado Structures, Inc. v. Ins. Co. of the W., 161 Wn.2d 577, 606, 167 P.3d 1125 (2007); Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 147, 930 P.2d 288 (1997). Where coverage is at issue, all that is necessary to recover fees under Olympic is that "the insurer compels the insured to assume the burden of legal action to obtain the full benefit of the insurance contract." Leingang, 131 Wn.2d at 148-49.

Hamblin's claims against National were a coverage dispute. The issues requiring resolution at trial were related to whether National failed to comply with its duty to protect its insured from liability by appropriately applying Castillo Garcia's insurance policy and properly analyzing the scope of its liability for the

events of February 6, 2016. National's actions in denying the application of a payout based on two accidents was the basis for Castillo Garcia and Hamblin seeking legal assistance to obtain the full benefit of National's insurance contract with Castillo Garcia.

National insists that there was not a coverage dispute because the company "always accepted coverage and paid policy limits before suit was filed." National points to its deposit of $99,374.10 into the court registry, which was the policy limit amount for one accident minus what had been paid to Sumner. But National's interpretation, that the company was only liable for one accident rather than two, is precisely the *coverage* issue Hamblin was challenging at trial and the basis for which National became liable for attorney fees under Olympic. National's deposit of an amount it determined was the extent of its liability did not immunize the company from Hamblin's claims.

National, citing Norris v. Church & Co., Inc., 115 Wn. App. 511, 513, 63 P.3d 153 (2002), also contends that Hamblin is not entitled to attorney fees because tort claims do not give rise to an award of fees. Norris involved a fraudulent concealment claim. Id. at 514. Norris is inapposite. The Washington Supreme Court has held that attorney fees in insurance claims such as Hamblin's are recoverable. Olympic, 117 Wn.2d at 52.

## B. Attorney fees to Beecher

National also challenged the attorney fees owed to Castillo Garcia's personal counsel, Brent Beecher. Without citing any authority, National contends that the court should not grant Beecher attorney fees because he did not

participate in trial, did not file any claims on behalf of Castillo Garcia, and did not

defend against the claims of Hamblin. National did not otherwise challenge with

any specificity as to the work claimed by Beecher.

The Washington Supreme Court extended "the right of an insured to

recoup attorney fees that it incurs because an insurer refuses to defend or pay

the justified action or claim of the insured, regardless of whether a lawsuit is filed

against the insured." Olympic, 117 Wn.2d at 52. As the court explained,

> When an insured purchases a contract of insurance, it seeks
> protection from expenses arising from litigation, not vexatious, time-
> consuming, expensive litigation with his insurer. Whether the
> insured must defend a suit filed by third parties, appear in a
> declaratory action, or as in this case, file a suit for damages to
> obtain the benefit of its insurance contract is irrelevant. In every
> case, the conduct of the insurer imposes upon the insured the cost
> of compelling the insurer to honor its commitment and, thus, is
> equally burdensome to the insured. Further, allowing an award of
> attorney fees will encourage the prompt payment of claims.

Id. at 52-53. Beecher participated in some depositions as counsel of record,

defended the deposition of Castillo Garcia taken by National, and responded to

discovery directed to Beecher. Once it was known that Castillo Garcia would not

be participating at trial, Beecher did not include time related to trial preparation

other than meeting the minimum requirements of the court's scheduling orders.

The trial court properly determined that Olympic provided a basis to award

attorney fees to Beecher. Thus, we need not address Hamblin's suggestion that

the award is recoverable damages[12] under the CPA.

---

[12] See Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC, 139 Wn. App.
743, 760-61, 162 P.3d 1153 (2007) (when attorney fees are recoverable as
damages, it is the finder of fact that determines the amount of damages).

*C. Fees and costs reasonable*

National next contends that some of Hamblin's attorney fees and costs were unreasonable.

An attorney is not permitted to charge an unreasonable fee. Berryman, 177 Wn. App. at 660 (citing RPC 1.5)). "A determination of reasonable attorney fees begins with a calculation of the 'lodestar,' which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Berryman, 177 Wn. App. at 660. But the lodestar can include only hours "reasonably expended" and hours must be discounted where spent on "'unsuccessful claims, duplicated effort, or otherwise unproductive time.'" Id. at 662 (quoting Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 597, 675 P.2d 193 (1983)).

When reviewing fee affidavits from counsel, "[c]ourts must take an active role in assessing the reasonableness of fee awards[.]" Id. at 657 (quoting Mahler v. Szucs, 135 Wn.2d 398, 434, 957 P.2d 632 (1998)). Trial court findings on reasonable fees cannot be conclusory, but rather, "must show how the court resolved disputed issues of fact and the conclusions must explain the court's analysis." Id. at 658. A trial court's failure to address unreasonable billing concerns may result in reversible error. Id. at 658-59.

National asserts that the trial court improperly included fees related to the IFCA and CPA claims upon which Hamblin was unsuccessful at trial. We disagree.

First, IFCA was the only claim the jury did not find in favor of Hamblin. Second, the trial court found that the IFCA claim shared a common core of facts and circumstances with Hamblin's other claims.

"An award of attorney fees may be limited to fees attributable to successful claims if the claims brought are unrelated and separable. In contrast, when parties prevail on any significant issue inseparable from issues on which the parties did not prevail, a court may award attorney fees on all issues." Dalton M, LLC v. N. Cascade Tr. Servs., Inc., 20 Wn. App. 2d 914, 962, 504 P.3d 834 (2022).

Regardless, as the trial court noted in its findings, Hamblin's attorneys removed the fees solely related to the IFCA claims.

National also claims that Hamblin's attorney fees were unreasonable because of its hourly rate, block billing, duplicative work, and excessive time. Hamblin's attorneys elected to charge their 2018 hourly rate even though their rates increased in 2020. Hamblin submitted a declaration of support from Toby Marshall, an attorney from a different firm who is familiar with complex civil litigation and reviewed the billing records and history of the Hamblin litigation. Marshall opined that the rates requested for the work performed was reasonable.

In the trial court's issued findings and conclusions, it found that the attorney and staff hourly rates were reasonable and Hamblin took steps to "avoid and reduce claims that might involve duplicative, non-productive or wasteful matters," and that the hours expended on Hamblin's case were reasonable. Among other things, the court considered the "time and labor" required in Hamblin's case, the "novelty and difficulty of the questions involved," the skills

required to litigate the case and the experience of Hamblin's counsel, as well as the "fee customarily charged in Seattle for similar legal services." The court specifically noted that Hamblin's fee request was "carefully crafted." But despite awarding Hamblin all of his fees, the court declined Hamblin's request to apply the lodestar multiplier. The trial court did not abuse its discretion in awarding attorney fees.

National next asserts that the trial court improperly awarded costs as to Helsell Fetterman LLP.

Below, National objected to Hamblin's attorney costs on the basis that the costs had not been itemized or determined to be awardable costs under RCW 4.84.010. National maintains this argument on appeal, and contends that certain costs for consultants, depositions, and mediations were improperly awarded.

RCW 4.84.010 defines the costs that are allowed to a prevailing party. The statute limits costs that may be recovered by a party, such as filing and notary fees, fees to obtain records, witness fees, and certain deposition fees. RCW 4.84.010. However, where a court awards reasonable attorney fees under Olympic, it "necessarily includes all expenses incurred to establish coverage under an insurance policy and is *not limited to those expenses enumerated as recoverable statutory costs in RCW 4.84.010*." Panorama Vill. Condo. Owners Ass'n Bd. of Directors v. Allstate Ins. Co., 144 Wn.2d 130, 134, 26 P.3d 910 (2001) (emphasis added).

Hamblin submitted an invoice of costs as part of his attorney's declaration. The trial court found that "the expenses and costs summarized on in [Hamblin

and Castillo Garcia's attorneys'] declarations . . . are reasonable and necessarily incurred for the successful resolution of the bad faith, contract, and other intertwined cause of action[.]"  Because the court elected to award fees on equitable grounds under Olympic, the court was not limited to awarding costs under RCW 4.84.010.

D.  *Attorney fees on appeal*

Hamblin also requests fees on appeal under RAP 18.1.  Similar to the trial court, we also grant Hamblin his attorney fees on appeal under Olympic.

We affirm.

_____
Colum, J.

WE CONCUR:

_____          _____
Birk, J.                                        Dwyer, J.