[No. 54398-9-I.   Division One.   May 31, 2005.]

RED OAKS CONDOMINIUM OWNERS ASSOCIATION, *Respondent*, v. SUNDQUIST HOLDINGS, INC., ET AL., *Respondents*, MUTUAL OF ENUMCLAW INSURANCE COMPANY, *Appellant*.

318

*David R. Collins* (of *Hackett Beecher & Hart*), for appellant.

*Charles K. Harer* and *Heather L. McCormick* (of *Condominium Law Group, P.L.L.C.*), for respondent Red Oaks Condominium Owners Association.

*Gregory T. Bartholomew* and *Jeffrey G. Frank* (of *Bullivant Houser Bailey, P.C.*), for respondents Sundquist Holdings, Inc., et al.

*Robert J. Curran*, amicus curiae.

¶1  BAKER, J. — Red Oaks Condominium Owners Association (Red Oaks) sued its developer, Sundquist Holdings, Inc. (Sundquist), for damages stemming from construction defects after Sundquist's insurer, Mutual of Enumclaw Insurance, Co. (MOE), refused to settle its claims. Sundquist and Red Oaks entered into a settlement agreement which was contingent on a judicial determination that it was reasonable. MOE moved to intervene in the reasonableness hearing and for a continuance. The parties stipulated to MOE's intervention, but the court denied MOE's motion for a continuance and its subsequent motion for

reconsideration. MOE appeals the court's order denying its motion to reconsider and the judgment. We affirm and hold that MOE was provided sufficient notice, consistent with due process, because it was afforded a reasonable amount of time to conduct discovery and to identify any conflicts of interest that might have arisen from its participation in the hearing.

I

¶2 Red Oaks notified Sundquist of construction defects sometime in the Spring of 2002. In April of 2003, Sundquist notified MOE of Red Oaks's claims and MOE defended Sundquist under a reservation of rights. The parties entered two consecutive agreements to toll the running of the statute of limitations as they tried to reach a settlement. MOE consented to the tolling agreements and participated in and paid for an investigation into Red Oaks's claims.

¶3 On March 3, 2004, MOE filed a declaratory judgment action against Sundquist disputing coverage of Red Oaks's claims.[1] The following day, Sundquist and Red Oaks began mediation and agreed on an amount of damages, but MOE refused to pay, so the parties did not reach settlement. Red Oaks filed suit against Sundquist on March 31. Two days later, Red Oaks and Sundquist entered into a settlement agreement whereby Sundquist stipulated to a settlement amount of $1,948,000 and assigned its rights against MOE to Red Oaks in exchange for a covenant not to execute and dismissal of the claims against the individual defendants in the lawsuit. The agreement was contingent on a court finding the settlement reasonable.

¶4 Red Oaks requested a hearing to determine whether the settlement agreement was reasonable and delivered a copy of the motion to MOE six business days before the hearing. MOE did not receive a copy of the settlement agreement until three days before the hearing. MOE moved

---

[1] Red Oaks also filed suit against MOE to obtain payment for the judgment entered in this case.

to intervene and requested a continuance in order to prepare and conduct discovery.

¶5 The parties stipulated that MOE could intervene in the reasonableness hearing, but the superior court denied MOE's motion for a continuance. Although given the opportunity, MOE did not participate in the hearing. The court found that the settlement agreement was reasonable and entered judgment consistent with the agreement.

¶6 MOE appeals the order denying reconsideration of its motion for continuance and the judgment.[2]

## II

¶7 MOE argues that the trial court denied it due process by refusing it time to prepare for the reasonableness hearing. MOE maintains that it needed time for discovery and to determine whether Sundquist would be prejudiced by MOE's participation in the hearing. It claims that six days' notice, with just three days to review the settlement agreement, was so inadequate as to deprive it of constitutional due process of law.

¶8 MOE appeals from an order on reconsideration of its motion for a continuance. Normally, orders on motions for continuance are reviewed for an abuse of discretion.[3] However, MOE claims a violation of its right to constitutional due process, and whether notice complies with due process is a question of law, and therefore reviewed de novo.[4] Under either standard of review, we conclude that MOE was afforded sufficient notice and time to prepare.

---

[2] Red Oaks argues that we should not review the trial court's order denying MOE's motion for time to prepare because it did not designate the order in its appeal. But, under RAP 2.4(c), we can review a final judgment not designated if the notice of appeal designates an order stemming from a motion to reconsider that judgment.

[3] *Pub. Util. Dist. No. 1 of Klickitat County v. Int'l Ins. Co.*, 124 Wn.2d 789, 813, 881 P.2d 1020 (1994).

[4] *Pub. Util. Dist. No. 2 of Grant County v. N. Am. Foreign Trade Zone Indus., L.L.C.*, 125 Wn. App. 622, 629, 105 P.3d 441 (2005).

¶9 When an insurer refuses to settle a claim, the insured and the claimant may negotiate a settlement on their own.[5] The insurer may be liable for the settlement amount to the extent that it is reasonable.[6] When a settlement agreement includes a covenant not to execute, concerns arise as to whether the settlement amount is reasonable. The insured may be persuaded to settle for an inflated amount in exchange for immunity from personal liability.

¶10 In *Chaussee v. Maryland Casualty Co.*,[7] we held that a trial court can reliably determine the reasonableness of a settlement in the context of a covenant judgment by using the factors applied in *Glover v. Tacoma General Hospital.*[8] Our Supreme Court has held that "the *Chaussee* criteria protect insurers from excess judgments especially where ... the insurer has notice of the reasonableness hearing and has an opportunity to argue against the settlement's reasonableness."[9] Thus, it is common for parties to move for a hearing to determine the reasonableness of settlement agreements.[10]

---

[5] *Chaussee v. Md. Cas. Co.*, 60 Wn. App. 504, 509-10, 803 P.2d 1339, 812 P.2d 487 (1991).

[6] *Chaussee*, 60 Wn. App. at 510.

[7] 60 Wn. App. 504, 509, 803 P.2d 1339, 812 P.2d 487 (1991).

[8] *Chaussee*, 60 Wn. App. at 512 (applying the factors in *Glover v. Tacoma Gen. Hosp.*, 98 Wn.2d 708, 658 P.2d 1230 (1983), *overruled on other grounds by Crown Controls, Inc. v. Smiley*, 110 Wn.2d 695, 756 P.2d 717 (1988)). *See also Besel v. Viking Ins. Co.*, 146 Wn.2d 730, 738-39, 49 P.3d 887 (2002) (applying the *Chaussee-Glover* factors). In *Glover*, the court adopted the reasonableness factors in the context of RCW 4.22.040, which governs the availability of contribution to a tortfeasor who enters into a settlement with a claimant. *Glover*, 98 Wn.2d at 716-18. The factors include: the damages involved; the merits of the plaintiff's liability theory; the merits of the defense's theory; the defendant's relative faults; the risks and expenses of continued litigation; the defendant's ability to pay; any evidence of bad faith, collusion, or fraud; the extent of the investigation and preparation of the case; and the interests of the parties not being released from liability. *Glover*, 98 Wn.2d at 717.

[9] *Besel*, 146 Wn.2d at 739.

[10] *See, e.g., Besel*, 146 Wn.2d at 734 (holding that the amount of a covenant judgment is the presumptive measure of an insured's harm if the settlement agreement is reasonable under the *Chaussee* factors); *Werlinger v. Warner*, 126 Wn. App. 342, 109 P.3d 22 (2005); *Howard v. Royal Specialty Underwriting, Inc.*, 121 Wn. App. 372, 379, 89 P.3d 265 (2004).

¶11 MOE claims that it did not participate in the reasonableness hearing because it was unsure whether it would be putting its interests ahead of the interests of Sundquist and potentially exposing itself to liability. Under a reservation of rights, an insurance company must defend its insured against all claims. In *Tank v. State Farm Fire & Casualty Co.,*[11] our Supreme Court explained that this obligation requires a heightened duty of good faith by the insurer:

> [T]he potential conflicts of interest between insurer and insured inherent in [a reservation of rights] defense mandate an even higher standard: an insurance company must fulfill an enhanced obligation to its insured as part of its duty of good faith. Failure to satisfy this enhanced obligation may result in liability of the company . . . .[12]

The court elaborated: "[A]n insurance company must refrain from engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk."[13] If an insurer puts its interests in limiting coverage above the insured's interests in settling a lawsuit, it may breach its duty of good faith and expose itself to liability.

¶12 MOE claims that, under the settlement agreement, it was unclear whether the covenant not to pursue the insured's assets was dependent upon judicial approval of the full settlement amount. The settlement agreement states that "[w]ith the approval by the court of the Stipulated Judgment described in Paragraph 2 of this Agreement, Red Oaks agrees to stipulate to a dismissal with prejudice of all claims asserted in the lawsuit against Larry and Diane Sundquist." Paragraph 2 indicates a settlement amount of $1,948,000. MOE argues that it did not have enough time to interpret this clause and resolve potential conflicts because it did not obtain a copy of the settlement

---

[11] 105 Wn.2d 381, 387, 715 P.2d 1133 (1986).

[12] *Tank,* 105 Wn.2d at 387.

[13] *Tank,* 105 Wn.2d at 388.

agreement until three days before the hearing. MOE was concerned that, if the covenant not to execute and to dismiss claims was contingent on the full settlement amount and MOE had participated in the hearing and convinced the court that the settlement amount was unreasonable, it would breach its duty of good faith to Sundquist.

¶13 To be consistent with due process, notice "must afford a reasonable time for those interested to make their appearance."[14] Reasonableness is measured by the particular circumstances.[15] MOE has not explained how having more time to interpret the settlement agreement would have remedied its concerns regarding a potential conflict of interest. It was aware of the duties it owed Sundquist and the conflicts of interest involved when it defends under a reservation of rights long before the parties reached settlement. Three days was enough time to interpret the clause and decide whether to proceed as an intervener in the reasonableness hearing. And to the extent that this appeal seeks to challenge the practice of holding a reasonableness hearing prior to coverage determination, our Supreme Court "has already held that a reasonableness hearing in this situation is appropriate."[16]

¶14 Furthermore, we do not foresee a circumstance in which an insurer would be subject to a bad faith action due to its participation in a reasonableness hearing. When an insurer is granted the opportunity to defend its interest in such a hearing, and does so in good faith, it will not be risking greater liability. After all, the court is ultimately determining whether the settlement is reasonable.

¶15 MOE also argues that a lack of adequate notice resulted in insufficient discovery. MOE divided its Red Oaks files between defense and coverage issues. By separating its coverage and defense functions, MOE attempted

---

[14] *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950) (citing *Roller v. Holly*, 176 U.S. 398, 20 S. Ct. 410, 44 L. Ed. 520 (1900); *Goodrich v. Ferris*, 214 U.S. 71, 29 S. Ct. 580, 53 L. Ed. 914 (1909)).

[15] *Mullane*, 339 U.S. at 315.

[16] *Howard*, 121 Wn. App. at 379.

to avoid conflicts of interest. The defense files were kept by Sundquist's appointed defense attorney, who had the duty to keep any information that might jeopardize Sundquist's coverage confidential.

¶16 MOE argues that because it divided functions, its coverage files may not have included enough information to assess the reasonableness of the settlement. It claims that Sundquist's defense attorney might have been obligated to withhold damage and scope of repair reports that contained details from which the insurance company could deny coverage. MOE maintains that it therefore needed more time for discovery in order to adequately prepare for the reasonableness hearing.

¶17 In *Howard v. Royal Specialty Underwriting, Inc.*,[17] we were presented with a similar argument. In *Howard*, a contractor entered into a settlement agreement with an employee and assigned its rights against its insurer. The insurer sought a reversal of the superior court's determination that the settlement was reasonable.[18] In addition to contesting the reasonableness of the settlement, the insurer argued that the trial court erred in denying its motion for a continuance in order to conduct discovery.[19] We explained why the trial court did not abuse its discretion in denying the insurance company more time:

> Royal received notice of the reasonableness hearing 30 days before the hearing. Royal was not a complete "stranger to the case." Royal provided counsel for its insured Cascade, and Cascade had the opportunity to participate in discovery. Royal had access to all of Howard's medical records and copies of the correspondence between the settling parties. At the reasonableness hearing, Royal was allowed to cross-examine Howard's treating physician and was able to present substantial evidence. Under these circumstances, the trial court did

---

[17] 121 Wn. App. 372, 89 P.3d 265 (2004).

[18] *Howard*, 121 Wn. App. at 375.

[19] *Howard*, 121 Wn. App. at 379.

not abuse its discretion in refusing to reopen discovery and continue the hearing.[20]

Similarly, MOE was not a stranger to this case. It was notified of the claims against Sundquist almost a year in advance of the hearing, defended Sundquist under a reservation of rights, agreed to the tolling of the statute of limitations, paid for an investigation into the claims, and was aware of ongoing settlement negotiations. It should have been no surprise to MOE that the parties settled quickly once a lawsuit was initiated. Further, the trial court permitted MOE to participate in the reasonableness hearing, but it chose not to.

¶18 In contrast to *Howard*, MOE was given only six days' notice and three days to review the settlement agreement. But the notice indicated the settlement amount, so MOE was provided six days to determine whether the amount was reasonable. And, as the superior court noted, whether the settlement agreement was contingent was not relevant to whether the amount was reasonable under the *Chaussee* factors. Given the circumstances surrounding this dispute, six days' notice was consistent with due process because it was a reasonable amount of time for MOE to make an appearance and defend its interests at the hearing.[21]

¶19 Affirmed.

Cox, C.J., and Agid, J., concur.

Reconsideration denied July 28, 2005.

---

[20] *Howard*, 121 Wn. App. at 379.

[21] Six days is also proper notice under the local court rules. Snohomish County Local Court Rule 7(b)(2)(B) states: "Any party desiring to bring any civil motion prior to trial, other than a motion for summary judgment, must file such motion documents with the clerk and serve all parties, and the court at least six (6) court days before the date fixed for such hearing."