**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

Filed
Washington State
Court of Appeals
Division Two

January 24, 2023

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STARR INDEMNITY & LIABILITY COMPANY, | No. 56027-5-II |
| Intervenor Appellant, | |
| and | |
| THOMSEN RUSTON, LLC, a Washington limited liability company; and JESS THOMSEN, INC., a Washington corporation, | |
| Plaintiffs Below, | |
| v. | |
| PC COLLECTIONS, LLC, | PUBLISHED OPINION |
| Respondent, | |
| and | |
| POINT RUSTON, LLC, a Washington limited liability company; THE ESTATE OF MICHAEL COHEN, a deceased individual; JULIE MCBRIDE, an individual; LOREN COHEN, as trustee of the LMC FAMILY TRUST and the CENTURY LMC FAMILY TRUST; LOREN COHEN and HOLLAND COHEN, husband and wife; MC RUSTON, LLC, a Washington limited company; MCBRIDE COHEN MANAGEMENT GROUP[, LLC, a Washington limited liability company; ABERNETHY ROAD GROUP, LLC, a Washington limited liability; MCBRIDE-COHEN CONSTRUCTION PAYROLL SERVICES, LLC, a Washington limited liability company; CENTRY TACOMA BUILDING, LLC, a Washington limited liability company; CENTURY | |

56027-5-II

CONDOMINIUMS, LLC, a Washington limited liability company; POINT RUSTON THEATRE, LLC, a Washington limited liability company; POINT RUSTON PHASE II, LLC, a Washington limited liability company; POINT RUSTON PHASE III, LLC, a Washington limited liability company; POINT RUSTON BUILDING 7, LLC, a Delaware limited liability company; PR RETIAL, LLC, a Delaware limited liability company; JLW POINT RUSTON INVESTMENTS, LLC, a Washington limited liability company; and DOES 1-10,

Defendants Below.

VELJACIC, J. — This appeal arises out of the mixed-use real estate development project at the former Asarco, Inc. smelter site in Tacoma. Starr Indemnity & Liability Company, the appellant in this case, provided directors and officers liability coverage to certain entities and managers involved in the development project, including Michael Cohen who was the manager of Point Ruston LLC (the lead entity involved in the development project). The relationship between the parties involved in the development project (the Thomsen Parties and the Cohen Parties) soured over time, resulting in multiple lawsuits. The parties sought to settle their disputes. The Cohen Parties asked Starr to contribute to the settlement, but it declined to do so claiming that it had no duty to contribute or indemnify based on the nature of the dispute.

After Starr declined to contribute, the parties reached a settlement agreement that included an $8 million stipulated judgment in favor of the Thomsen Parties against the Estate of Michael Cohen.[1] Pursuant to the structure of the settlement agreement, the stipulated judgment could only be recoverable from Starr. In addition, the structure allowed the Cohen Parties rather than the Thomsen Parties to recover the amount of the stipulated judgment from Starr under certain

---

[1] Michael Cohen passed away while this lawsuit was pending.

2

circumstances. The Estate then moved the trial court to find the amount of the stipulated judgment fair and reasonable under RCW 4.22.060, which the court granted.

Starr appeals the trial court's reasonableness order. Starr argues that the trial court abused its discretion in finding the stipulated judgment reasonable because the structure of the settlement agreement was unreasonable. Starr also argues that the trial court violated its procedural due process rights by holding and conducting the reasonableness hearing. Starr further argues that the trial court abused its discretion in finding the amount of the stipulated judgment fair and reasonable.

PC Collections LLC, the respondent in this case, asks us to decline addressing the merits of Starr's assignment of errors under RAP 2.5 because Starr did not properly raise the issues it now complains of in the trial court.

We reach the merits of Starr's appeal because Starr adequately raised below the issues it now argues, but we hold that the trial court did not abuse its discretion in finding the structure of the settlement agreement reasonable. We also hold that the trial court did not violate Starr's procedural due process rights. We further hold that the trial court did not abuse its discretion in finding the amount of the stipulated judgment reasonable. Accordingly, we affirm the trial court's reasonableness determination under RCW 4.22.060.

56027-5-II

FACTS[2]

I.    FACTUAL BACKGROUND

In 2006, MC Ruston LLC, and Thomsen Ruston LLC, formed Point Ruston LLC.  MC Ruston LLC, and Thomsen Ruston LLC each held a 50 percent membership interest and 49.5 percent economic interest in Point Ruston LLC.  Point Ruston LLC acquired certain real property from Asarco, Inc. for development purposes.  Over time, various limited liability companies directly or indirectly owned portions of the real property acquired from Asarco, Inc.  Michael Cohen served as the manager of MC Ruston LLC and Point Ruston LLC.

On March 11, 2020, Thomsen Ruston LLC and Jess Thomsen, Inc. (the plaintiffs)[3] filed a lawsuit in Pierce County superior court against various individuals and entities, including the Estate of Michael Cohen (the defendants).[4]  In its third amended complaint, the plaintiffs alleged numerous claims against the defendants, including a claim for breach of fiduciary duties against Michael Cohen both directly and derivatively.  The plaintiffs also requested judicial foreclosure, an accounting, and the appointment of a receiver.

---

[2] The factual background is drawn in part from the trial court's unchallenged findings of fact, which are verities on appeal.  *Hamblin v. Castillo Garcia*, 9 Wn. App. 2d 78, 85, 441 P.3d 1283 (2019).

[3] Thomsen Ruston LLC and Jess Thomsen, Inc. are also defined as the "plaintiffs" in the 2021 Settlement Agreement discussed below.

[4] The other various entities and individuals are: Point Ruston LLC; Julie McBride, in her individual capacity; Loren Cohen as trustee of the LMC Family Trust; Loren and Holland Cohen, husband and wife; MC Ruston LLC; M&J Real Estate Investment LLC; McBride Cohen Management Group LLC; Abernethy Road Group LLC; McBride-Cohen Construction Payroll Services LLC; Century Tacoma Building LLC; Century Condominiums LLC; Point Ruston Theatre LLC; Point Ruston Phase II LLC; Point Ruston Phase III LLC; Point Ruston Building 7 LLC; PR Retail LLC; JLW Point Ruston Investments LLC; and Does 1-10.

4

56027-5-II

Starr issued an insurance policy which provided directors and officers coverage to a number of defendant-companies and their managers.[5] This included Cohen as the manager of Point Ruston LLC. Pursuant to the policy, Starr agreed to defend against the plaintiffs' claims subject to a reservation of rights. Starr appointed DLA Piper, Fox Rothschild, and McNaul Ebel Nawrot & Helgren as defense counsel. The liability limits of the Starr policy were $5 million. However, pursuant to a provision in the Starr policy, the fees incurred by defense counsel would deplete the coverage limits of the insurance policy.

On June 9, Starr filed a lawsuit in the United States District Court for the Western District of Washington seeking a declaratory judgment that it had no duty to defend or indemnify the defendants in connection with this case (the Coverage Action). *Starr Indemnity & Liab. Co. v. Point Ruston, LLC*, No. C20-5539RSL, 2021 WL 3630511 at \*2 (W.D. Wash. Aug. 17, 2021). In addition, Starr sought to recover all defense costs it paid to defense counsel (approximately $1.5 million) to defend against the plaintiffs' claims in the Coverage Action. Starr had an incentive to allow the Pierce County case to proceed to trial so that it could deplete the insurance policy through payment of attorney fees and thereby maximize the amount of recoverable defense costs in the Coverage Action through a provision in its policy.

---

[5] The declaration of Peter Evans, the claims manager for Starr, stated that the insurance policy covered the following entities and individuals: Point Ruston LLC; Loren Cohen, individually and in his capacity as personal representative of the estate of Michael Cohen and the marital community of Michael Cohen and Julie McBride, and as trustee of LMC Family Trust; Holland Cohen; MC Ruston LLC; M&J Real Estate Investment LLC; Abernethy Road Group LLC; McBride-Cohen Construction Payroll Services LLC; Century Tacoma Building LLC; Century Condominiums LLC; Point Ruston Theatre LLC; Point Ruston Phase II LLC; Point Ruston Phase III LLC; PR Retail LLC; The Shops At Point Ruston I LLC; MC Real Estate Consultants LLC; Point Ruston General Construction LLC; Point Ruston Building 8 LLC; and Rainier Property Services LLC.

56027-5-II

During the course of this case, the parties conducted extensive discovery. However, before discovery could be completed, Cohen passed away. Cohen's death severely hampered the defendants' ability to defend against the plaintiffs' claims because he was the manager responsible for a number of the disputed transactions forming the basis of the plaintiffs' complaint and could no longer testify about the business reasons for his decisions.

As early as March 2020, the plaintiffs and the defendants (the Thomsen Parties and the Cohen Parties, respectively) were engaged in settlement discussions regarding the various claims discussed above. The defendants (the Cohen Parties) asked Starr to contribute its policy limits ($5 million less $1.5 million for expended defense costs) to a settlement with the plaintiffs (the Thomsen Parties).

On March 29, 2021, Starr's coverage counsel sent a letter denying the defendants' request. In its letter, Starr disputed coverage for the plaintiffs' breach of fiduciary duty claims and stated that "[it] ha[d] no duty to contribute any amount toward a settlement in this matter." Clerk's Papers (CP) at 7020. The letter also stated that the defendants "[were] free to reach a reasonable settlement without Starr's consent, and Starr will not assert lack of consent, standing alone, as a defense to coverage." CP at 7020-21.

Despite Starr's refusal to contribute to a settlement and with its written acknowledgement that the defendants could settle the matter without its consent, the plaintiffs and the defendants continued settlement discussions. Starr also had access to and was provided all discovery in this case.

6

II.     The RELEVANT SETTLEMENT AGREEMENT PROVISIONS

On May 21, the parties entered into a complex, 244-page settlement agreement (2021 Settlement Agreement).  The 2021 Settlement Agreement settled all of the claims arising from the third amended complaint discussed above.

Exhibit 13 of the 2021 Settlement Agreement ("Amended Note") required Point Ruston LLC, to pay the plaintiffs $26,000,000 ("Principal Balance").  The Amended Note addressed a portion of the "PR-Thomsen Loans," which consisted of two different loan amounts provided by Thomsen Ruston to Point Ruston LLC.  The Amended Note provided that no interest would accrue on the principal balance in the absence of default (as that term is defined under the Amended Note). It also provided an incentive for a timely cash payment: if Point Ruston LLC, paid the plaintiffs $12,000,000 ("Initial Cash Payment") on or before September 15, 2021, then the Principal Balance would be reduced from $26,000,000 to $9,000,000 which was due and payable by the end of 2022.[6]

Section 3 of the 2021 Settlement Agreement required LMC Ruston Capital LLC, or LMC Ruston LLC, to pay the plaintiffs $500,000 on or before May 26, 2021.  Failure to pay the $500,000 would constitute a default under the Amended Note and the 2021 Settlement Agreement.  This particular event of default would have entitled the plaintiffs to enter a confession of judgment (exhibit 17) and receiver order (exhibit 18), against certain defendants.  Entry of the confession of judgment would require the defendants (other than the Estate) to pay a $26,000,000 judgment to the plaintiffs with interest accruing at a rate of 12 percent per year.

Section 4 of the 2021 Settlement Agreement granted LMC Ruston Capital LLC an option to purchase the plaintiff's right, interest, and title in the PR-Thomsen Loans.  In order to exercise

---

[6] In this manner, Thomsen Ruston was reducing the obligation from $26,000,000 to $17,000,000.

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

the option, LMC Ruston Capital LLC had to pay the plaintiffs $17,000,000 ("Cash Purchase

Price"). Payment for the option would be as follows:

> (i) Five hundred thousand dollars ($500,000) as provided in Section 3.

> (ii) LMC Ruston Capital shall pay or cause to be paid a total of twelve million dollars ($12 million) (including the $500,000 payment in Section 3) in cash to Thomsen Ruston and JTI (the "Initial Cash Payment") on or before September 15, 2021; and

> (iii) Five million dollars ($5 million) (the "Deferred Cash Amount") shall be paid to Thomsen Ruston and JTI on or before December 31, 2022, including any payments made pursuant to the Assignment (PR Phase III).

CP at 6750.

Section 2(b) of the 2021 Settlement Agreement included the following provisions

regarding the breach of fiduciary duty claims against the Estate, which implicated the defendants'

insurance policy with Starr:

> (b) Counsel for the Parties shall execute and authorize the filing and entry in Superior Court for Pierce County, Washington, in the 2020 Litigation, of the Breach of Fiduciary Duty Claims Judgment, a copy of which is attached to the Dismissal Order. In connection therewith,

>> (i) The Estate of Michael Cohen assigns to Plaintiffs any rights it has against any insurance policy or insurance company that could arguably provide indemnity coverage for the claims that form the basis of the Breach of Fiduciary Duty Claims Judgment, including any claims related to the duty to defend or indemnify the Estate of Michael Cohen, extra-contractual claims, statutory claims, or for breach of the duty of good faith and fair dealing (the "Insurance Assignment")

>> (ii) In consideration for the Insurance Assignment, Plaintiffs agree not to execute or enforce the Breach of Fiduciary Duty Claims Judgment directly against the Estate of Michael Cohen and agree to look solely to any insurance policy or insurance company to collect any amounts owed under the Breach of Fiduciary Duty Claims Judgment pursuant to the Insurance Assignment, provided however, that the foregoing covenant does not apply to any claims for indemnity or contribution Plaintiffs or any other party may have arising out of or related to the Third Amended Consent Decree.

8

(iii) The Cohen Parties and/or the Estate of Michael Cohen will move at their expense to have the reasonableness of the Breach of Fiduciary Duty Claims Judgment approved by the court in the 2020 Litigation, and the Thomsen Parties will not object to such motion.

(iv) Through September 15, 2021, Plaintiffs authorize the Cohen Parties and/or the Estate of Michael Cohen to negotiate and reach a settlement with any insurance company to collect any amounts owed under the Breach of Fiduciary Duty Claims Judgment, and to otherwise pursue any claims against an insurance company relating to the Breach of Fiduciary Duty Claims Judgment, including any claims related to the duty to defend or indemnify the Estate of Michael Cohen, extra-contractual claims, statutory claims, or for breach of the duty of good faith and fair dealing ("Insurance Settlement"). . . .

(v) If, prior to the payment in full of the Cash Purchase Price, and subject to Section 3(a)(iv), if there is a settlement with, or judgment against, an insurance company regarding the Insurance Assignment and/or the Breach of Fiduciary Duty Claims Judgment, and proceeds are recovered relating to the Insurance Assignment and/or the Breach of Fiduciary Duty Claims Judgment, then 80% of the first $2,500,000 of the proceeds received from such settlement or such recovery shall be immediately paid to Thomsen Ruston and/or JTI and shall count as a payment to be applied towards the Cash Purchase Price (and applied specifically towards the Initial Cash Payment if it has not yet been received in full by Thomsen Ruston and/or JTI); after $2,500,000 is collected, Thomsen Ruston and/or JTI shall be entitled to keep 100% of the proceeds, which will be applied toward the Cash Purchase Price and specifically the Initial Cash Payment. Notwithstanding the foregoing, once the Cash Purchase Price has been received in full by Thomsen Ruston and/or JTI from any source, then any such insurance-related proceeds described herein may be retained by the Cohen Parties and shall not be paid to any Thomsen Party. This provision is intended to allow the Cohen Parties to maintain control over the coverage litigation; to provide the Cohen Parties with an incentive to pursue the insurance companies; and to provide a source of payment to the Thomsen Ruston and/or JTI, but not to increase the total Cash Purchase Price.

CP at 6746-48.

"Breach of Fiduciary Duty Claims Judgment" is defined as "the judgment in the form attached to the Dismissal Order for the claims on behalf of Plaintiffs (in their own capacity as opposed to derivative claims) against Michael Cohen for breach of fiduciary duty as asserted in Plaintiffs' Third Amended Complaint." CP at 6775.

9

Exhibit 3 to 2021 Settlement Agreement included a stipulated judgment (the covenant judgment at issue in this case) against the Estate, which is attached to the dismissal order:

> Plaintiffs and the Estate of Michael Cohen, through their respective undersigned attorneys, hereby stipulate to the entry of judgment against the Estate of Michael Cohen and in favor of Plaintiffs in the amount of $8,000,000 (eight million dollars) without fees or costs to either party for the Breach of Fiduciary Duty Claim alleged in Plaintiffs' Third Amended Complaint in the above-captioned matter.

CP at 6825.

Under the option set out in Section 4(b), if the plaintiffs received the initial cash payment on or before September 15, 2021, the plaintiffs would assign its rights to the stipulated judgment to PC Collections in the event the plaintiffs had not reached a settlement with Starr:

> (v) Provided that the Plaintiffs have not already settled with the insurance carriers, Plaintiffs will assign the Breach of Fiduciary Duty Claims Judgment to PC Collections pursuant to an Assignment and Assumption Agreement (Stipulated Judgment) in the form attached hereto as Exhibit 19.

CP at 6751. PC Collections is defined as one of the "Cohen Parties" in the 2021 Settlement Agreement, but, importantly, PC Collections is not the same entity as the Estate of Michael Cohen.

Exhibit 19 to the 2021 Settlement Agreement is the plaintiffs' assignment of the stipulated judgment to PC Collections. Exhibit 19 reads in relevant part:

> 1. <u>Entry of Judgment</u>: The Estate agrees to entry of the Breach of Fiduciary Duty Claims Judgment.

> 2. <u>Assignment by the Estate</u>: The Estate hereby assigns any rights it has against any insurance policy or insurance company that could arguably provide coverage (defense or indemnity) for the claims that form the basis of the Breach of Fiduciary Duty Claims Judgment, including any claims related to the duty to defend or indemnify the Estate, extra-contractual claims, statutory claims, or for breach of the duty of good faith and fair dealing, to Plaintiffs.

> 3. <u>Covenant not to Execute</u>: Plaintiffs agree not to execute or enforce the Breach of Fiduciary Duty Claims Judgment directly against the Estate and agree to look solely to any insurance policy or insurance company to collect any amounts

10

owed under the Breach of Fiduciary Duty Claims Judgment pursuant to the Insurance Assignment.

    4. <u>Assignment by Plaintiffs</u>.  Plaintiffs hereby assign and transfer to PC Collections all of Plaintiffs' right, title, and interest in the Breach of Fiduciary Duty Claims Judgment assigned in the previous two paragraphs, including the Insurance Assignment, subject to Plaintiffs' covenant not to execute.

CP at 6975-76.

Section 10(a) of the 2021 Settlement Agreement provided that the plaintiffs would release all claims against the defendants arising from the third amended complaint.  However, section 10(e)(ii) provided that "In addition, the foregoing releases shall not operate to release any claims that the [plaintiffs]: . . .  may have arising out of or related to the Breach of Fiduciary Duty Claims Judgment."  CP at 6757.

### III.   THE REASONABLENESS HEARING AND TRIAL COURT'S ORDERS

On May 25, 2021, the Estate filed a motion asking the trial court to determine that the stipulated judgment was fair and reasonable ("reasonableness motion") under RCW 4.22.060.  The motion was originally noted for a hearing on June 4.  A copy of the reasonableness motion was e-mailed to Starr's defense adjuster, Peter Evans, on May 26.  Starr's coverage counsel received the reasonableness motion on May 28.  As a professional courtesy to Starr, the reasonableness motion was re-noted for a hearing to June 11.

On June 7, Starr filed a motion to intervene and stay/continue the determination of reasonableness of the stipulated judgment.  Starr argued that: (1) it was entitled to intervene as a matter of right or by permission; (2) the trial court should stay all proceedings related to the reasonableness motion given the pending Coverage Action; and (3) the trial court should continue the reasonableness hearing to allow it to conduct discovery.  Starr also contended that the structure of the stipulated judgment was unreasonable.

11

56027-5-II

The settling parties did not object to Starr's motion to intervene. However, the settling parties did object to Starr's motion to stay or continue the reasonableness hearing.

At the June 11 reasonableness hearing, Starr argued that the overall structure of the settlement agreement was unreasonable. Starr also provided argument to support its motion to stay or continue the reasonableness hearing.

The trial court granted Starr's motion to intervene. However, the court denied Starr's motion to stay or continue the reasonableness hearing.

Starr failed to provide briefing opposing the reasonableness motion on the merits. The trial court noted that Starr's failure to brief and fully argue the issues on the merits was a tactical decision by counsel:

> THE COURT: So the whole point of today's hearing was for the reasonableness hearing. Can you articulate for me what prevented you from filing a brief with the Court in anticipation, since you had agreement or at least non-opposition of intervention, of your argument on reasonableness based on the factors?
> [Starr's Counsel]: Your Honor, I thought—I thought we didn't have standing and it would conflict with our motion to continue to both say that we needed more time to explore these factors and argue them but then also explore the factors and argue them.
> THE COURT: That's a tactical decision, is it not, [Starr's counsel]?

Report of Proceedings at 52-53. Despite its failure to brief the merits, the trial court permitted Starr to provide oral argument on the reasonableness factors set out in *Chaussee v. Maryland Casualty Co*., 60 Wn. App. 504, 803 P.2d 1339 (1991), in order to preserve its objection.

The trial court then entered its findings of fact and conclusions of law on the reasonableness motion, which outlined each of the nine factors set out in *Chaussee*. Accordingly, the court entered an order finding that the amount of the stipulated judgment ($8,000,000) was fair and reasonable. Starr appeals.

12

56027-5-II

ANALYSIS

I.      RAP 2.5

As an initial matter, PC Collections argues that we should decline to address the merits of Starr's appeal under RAP 2.5 because it failed to properly raise the issues it now complains of in the trial court.  We disagree because Starr discussed the reasonableness of the overall structure of the 2021 Settlement Agreement and the amount of the stipulated judgment in its motion to intervene and in its oral argument at the reasonableness hearing.  Starr is not raising new issues merely because it approaches its arguments in a different way.  *Kaiser Found. Health Plan, Inc. v. Brice*, 22 Wn. App. 2d 227, 239, 510 P.3d 1017 (2022).  Accordingly, we address the merits of Starr's appeal.[7]

II.     REASONABLENESS OF THE STIPULATED JUDGMENT

Starr argues that the trial court abused its discretion by finding the stipulated judgment fair and reasonable.  We disagree.

A.      Standard of Review

We review reasonableness determinations made under RCW 4.22.060 for an abuse of discretion.  *Hamblin v. Castillo Garcia*, 9 Wn. App. 2d 78, 85, 441 P.3d 1283 (2019).  A trial court abuses its discretion where its decision rests on untenable grounds, was made for untenable reasons, or applies an incorrect legal standard.  *Id*.  Reasonableness hearings require factual

---

[7] However, we do note that counsel for Starr raised a new issue by way of a statement of additional authorities submitted after oral argument.  It asks us to disregard the corporate form of PC Collections because "[that entity] is merely a vehicle for Loren Cohen to recover the Stipulated Judgment against his deceased father from Starr for his personal benefit, thereby doubling (some of) his alleged ill-gotten gains."  Statement of Additional Auths. at 3.  We exercise our discretion under RAP 2.5 and decline to address Starr's corporate veil piercing argument because this is a new issue improperly raised for the first time on appeal.

13

56027-5-II

determinations, which will be disturbed only if unsupported by substantial evidence. *Id*.

Unchallenged findings of fact are verities on appeal. *Id*.

### B. Legal Principles

"When an insured defendant believes its insurer is refusing to settle a plaintiff's claims in bad faith, the insured can negotiate an independent pretrial settlement with the plaintiff." *Bird v. Best Plumbing Grp., LLC*, 175 Wn.2d 756, 761, 287 P.3d 551 (2012).

"[T]he typical settlement agreement involves three features: (1) a stipulated or consent judgment between the plaintiff and insured, (2) a plaintiff's covenant not to execute on that judgment against the insured, and (3) an assignment to the plaintiff of the insured's coverage and bad faith claims against the insurer." *Id*. at 764-65. "This type of settlement agreement, often referred to as a covenant judgment, 'does not release a tortfeasor from liability; it is simply an agreement to seek recovery only from a specific asset—the proceeds of the insurance policy and the rights owed by the insurer to the insured.'" *Id*. at 765 (internal quotation marks omitted) (quoting *Besel v. Viking Ins. Co. of Wisconsin*, 146 Wn.2d 730, 737, 49 P.3d 887 (2002)).

Reasonableness hearings under RCW 4.22.060 apply to covenant judgments. *Bird*, 175 Wn.2d at 767. The statute provides: "A hearing shall be held on the issue of the reasonableness of the amount to be paid with all parties afforded an opportunity to present evidence. A determination by the court that the amount to be paid is reasonable must be secured." RCW 4.22.060(1).

"If the amount of the covenant judgment is deemed reasonable, . . . it becomes the presumptive measure of damages in a later bad faith action against the insurer." *Bird*, 175 Wn.2d at 765. "Because the entry of a reasonable covenant judgment sets the presumptive damages in an action alleging the insurer's bad faith and those damages compensate the injured party for the

14

insured's tortious acts, the settlement underlying the covenant judgment must be structured to avoid unjustly enriching either insured or insurer." *Hamblin*, 9 Wn. App. 2d at 89. This ensures that a covenant judgment does not violate the equitable maxim that "'[a] person is not permitted to profit by his own wrong at the expense of another.'" *Id*. at 88-89 (quoting RESTATEMENT (FIRST) OF RESTITUTION § 3 (1937)).

There are nine factors the trial court must consider to determine if a settlement is reasonable:

> "(1) [T]he releasing party's damages; (2) the merits of the releasing party's liability theory; (3) the merits of the released party's defense theory; (4) the released party's relative fault; (5) the risks and expenses of continued litigation; (6) the released party's ability to pay; (7) any evidence of bad faith, collusion, or fraud; (8) the extent of the releasing party's investigation and preparation; and (9) the interests of the parties not being released."

*Bird*, 175 Wn.2d at 766 (quoting *Mut. of Enumclaw Ins. Co. v. T & G Constr., Inc*., 165 Wn.2d 255, 264, 199 P.3d 376 (2008)). These are known as the *Chaussee* factors. No single factor controls, and the trial court considers each case individually. *Hamblin*, 9 Wn. App. 2d at 85. The settling parties have the burden to prove the proposed settlement's reasonableness. *Id*. Once proved, the burden shifts to the party arguing the settlement resulted from collusion or fraud. *Id*. at 85-86.

C.    Reasonableness of the Settlement Structure

Starr argues that the structure of the stipulated judgment and the 2021 Settlement Agreement was unreasonable because it unjustly enriches the insured tortfeasor—the Estate—as its heirs and assigns would stand to collect the insurance proceeds from a later bad faith action for its own tortious conduct. We disagree.

15

Starr frames the issue as a question of law to achieve de novo review. But *Hamblin* makes clear that the structure of the covenant judgment is reviewed for reasonableness, which in turn is reviewed for an abuse of discretion. 9 Wn. App. 2d at 85, 88-90.

As discussed above, the stipulated judgment provided that it would be entered against the Estate and in favor of the plaintiffs. Section 2(b)(v) of the 2021 Settlement Agreement, which is the language that Starr appears to take issue with, provided that: "Notwithstanding the forgoing, *once the Cash Purchase Price has been received in full by Thomsen Ruston and/or JTI from any source, then any such insurance-related proceeds described herein may be retained by the Cohen Parties* and shall not be paid to any Thomsen Party." CP at 6748 (emphasis added).

"Settlement agreements are contracts." *Hamblin*, 9 Wn. App. 2d at 91. When interpreting a contract, we view the contract as a whole, interpreting particular language in the context of other contract provisions. *See Weyerhaeuser Co. v. Com. Union Ins. Co.*, 142 Wn.2d 654, 669, 15 P.3d 115 (2000). We attempt to harmonize clauses that seem to conflict. *Nishikawa v. U.S. Eagle High, LLC*, 138 Wn. App. 841, 849, 158 P.3d 1265 (2007).

Here, the structure of the stipulated judgment and 2021 Settlement Agreement is not unreasonable because it does not unjustly enrich the insured-tortfeasor, the Estate. Although the Cohen Parties include the Estate, a plain language interpretation of the stipulated judgment and 2021 Settlement Agreement shows that the Cohen Parties, but not the Estate, would be entitled to keep the insurance proceeds, if any, subject to full payment of the cash purchase price.

More pointedly, although certain Cohen Parties are related to Cohen and are also insureds under the Starr policy, they would not be benefiting from their own wrongdoing because the 2021 Settlement Agreement only specifies a breach of fiduciary duty claim against Michael Cohen individually. *See Hamblin*, 9 Wn. App. 2d at 89-90. But as to Cohen, his Estate is not benefitting

16

from his wrongdoing because the Estate is among the parties responsible for paying the Thomsen Parties up front. This is a matter of timing. The Cohen Parties only retain insurance proceeds if those proceeds are obtained *after* their payment of the cash purchase price to the Thomsen Parties.

The result is that the Thomsen Parties, the beneficiaries of the insurance contract, are not hung out to dry for an unspecified period of time. Instead, they are paid immediately with the Cohen Parties bearing the risk that Starr drags the case into long term litigation. Thus, there is no unjust enrichment here for an insured tortfeasor. Starr provides no authority showing that this particular structure (though unconventional) is unreasonable. Accordingly, this argument fails.

Starr also argues that the structure of the stipulated judgment is unreasonable because it lacks a true assignment of rights to the plaintiffs, as required by *Bird*. We disagree because there was a valid assignment to the plaintiffs of the insured's coverage and bad faith claims against the insurer, Starr. Accordingly, this argument fails.

Starr then appears to contend that the plaintiffs impermissibly assigned their rights under the stipulated judgment to PC Collections while retaining their covenant not to execute. However, Starr provides no authority showing that this particular assignment renders the overall structure of the stipulated judgment unreasonable. "Appellate courts need not consider arguments that are unsupported by pertinent authority, references to the record, or meaningful analysis." *Cook v. Brateng*, 158 Wn. App. 777, 794, 262 P.3d 1228 (2010).

Still, we exercise our discretion to consider the argument, which fails. "Contractual rights can be assigned unless the assignment is forbidden by statute or is otherwise inoperative on public policy grounds." *Int'l Com. Collectors, Inc. v. Mazel Co., Inc*., 48 Wn. App. 712, 716-17, 740 P.2d 363 (1987). Here, Starr has not shown that this particular assignment of rights is forbidden.

The dissent accurately points out that the covenant judgment must be structured to avoid "unjustly enriching either insured or insurer." Dissent at 28. While we agree with this legal principle, we note that Starr fails to show that the trial court's conclusion, that there was no bad faith, collusion, or fraud, is manifestly unreasonable or based on untenable grounds. Further, Starr does not show that this assignment is "unjust." Again, we are concerned about an insured benefitting from its own wrongdoing. While the Cohen Parties are insureds, the Thomsen Parties did not allege breach of fiduciary duties claim against them—only the Estate. And notably, the Cohen Parties bore the burden and risk of continued litigation after paying the purchase price amount. There is nothing unjust about these parties receiving proceeds. Finally, while a corporate veil piercing argument could have been developed below, as Starr would have it, to show that the Cohen Parties were functionally "the same" as Michael Cohen himself, Starr ignored its opportunity to develop that record—we cannot consider that argument when it is raised at this late juncture, via supplemental authorities.

D.      Necessity of Reasonableness Hearing[8]

Starr also appears to argue that trial court erred in holding a reasonableness hearing on the stipulated judgment because the Estate was already released from liability under the 2021 Settlement Agreement. We disagree.

---

[8] In order to achieve de novo review, Starr argues that the issue of whether a reasonableness hearing should go forward implicates the trial court's subject matter jurisdiction. To support its argument, Starr cites *Mut. of Enumclaw Ins. Co. v. Myong Suk Day*, 197 Wn. App. 753, 393 P.3d 786 (2017), and *Steel v. Olympic Early Learning Ctr.*, No. 50981-4-II (Wash. Ct. App. May 29, 2019) (unpublished),http://www.courts.wa.gov/opinions/index.cfm?fa=opinions.showOpinions&filena me=509814MAJ . However, Starr's reliance on *Suk Day* is misplaced because the court in that case did not hold that the necessity of a reasonableness hearing goes to the subject matter jurisdiction of the trial court. And *Steel* is an unpublished court of appeals decision which is not binding on us. In any event, we need not decide whether the issue is jurisdictional because a reasonableness hearing was properly held in this case.

56027-5-II

If a reasonableness hearing will have no effect in the subsequent bad faith litigation, i.e., if the amount determined by the court at the conclusion of the hearing will not be used as the presumptive measure of damages in the subsequent bad faith action, the court need not hold a reasonableness hearing. *See Villas at Harbour Pointe Owners Ass'n v. Mut. of Enumclaw Ins. Co.*, 137 Wn. App. 751, 760-61, 154 P.3d 950 (2007).

Here, Starr's argument fails because it ignores the portion of the 2021 Settlement Agreement that expressly states that "the foregoing releases shall not operate to release any claims that the [plaintiffs]: . . . may have arising out of or related to the Breach of Fiduciary Duty Claims Judgment." CP at 6757. Because the 2021 Settlement Agreement did not release the breach of fiduciary duty claims against the Estate, a reasonableness hearing was properly held to establish the presumptive measure of damages in any later suit against Starr. Accordingly, this argument fails.

E.      Reasonableness of the Amount of the Stipulated Judgment[9]

Starr argues that the trial court abused its discretion in finding the amount of the stipulated judgment fair and reasonable. Starr challenges only five of the nine *Chaussee* factors on appeal. As discussed above, unchallenged findings of fact are verities on appeal. *Hamblin*, 9 Wn. App. 2d at 85. Accordingly, we only address the challenged factors.

---

[9] Starr appears to argue, without any citation to binding authority, that the trial court abused its discretion in concluding that the amount of the stipulated judgment was reasonable because Starr's failure to settle the case was irrelevant in determining reasonableness. Starr's argument mischaracterizes the trial court's findings of fact. The trial court's final order pointed to the settling parties' attempts to invite Starr to participate in settlement discussions as evidence to show a lack of bad faith, collusion, or fraud, which weighs in favor of finding the amount of the stipulated judgment reasonable. Simply put, such evidence was relevant. This argument fails.

19

56027-5-II

i.      Claimed Damages

Starr argues that the trial court abused its discretion in finding the amount of the stipulated judgment reasonable because there was no evidence to establish the claimed damages resulting from Cohen's alleged breach of fiduciary duties. We disagree.

Here, the trial court found that the plaintiffs' claimed damages for Cohen's breach of fiduciary duties exceeded $26,000,000. Starr appears to take issue with this figure because it corresponds with the settled amount of the PR-Thomsen Loans in the 2021 Settlement Agreement. But the order itself states that this figure corresponds with wrongly paid "management fees," "related party transactions," and a "South Tempe Arizona Loan" that Cohen allegedly used for his own benefit. CP at 7066. The PR-Thomsen Loans do not appear to include these alleged self-dealing transactions. It is clear that were we to add the PR-Thompson Loans, the amount would exceed $26,000,000, just as the trial court found. Accordingly, this argument fails.

Starr also appears to argue that the trial court abused its discretion by citing its general familiarity with the record and relying on plaintiffs' receivership motions (and declarations in support of those motions) to establish the claimed damages factor under *Chaussee*. However, Starr provides no authority to support its assertion that this constitutes an abuse of discretion. "Appellate courts need not consider arguments that are unsupported by pertinent authority, references to the record, or meaningful analysis." *Cook*, 158 Wn. App. at 794. Accordingly, we do not further consider the argument.

Starr further appears to argue that there was no evidence to support the plaintiffs' claimed damages for breach of fiduciary duties because they asserted those claims against Cohen only derivatively as members of Point Ruston LLC. However, in their complaint, the plaintiffs alleged breach of fiduciary duty claims against Cohen *both* directly and derivatively. And the 2021

20

56027-5-II

Settlement Agreement likewise makes clear that the breach of fiduciary duties claims were *directly* asserted against Cohen.  Accordingly, this argument fails.

### ii.    The Merits of the Releasing Party's Liability Theory

Starr argues in passing that trial court abused its discretion in finding that the second *Chaussee* factor weighed in favor of reasonableness because the court erroneously relied on the plaintiffs' receivership motions and supporting declarations from the established record.  "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998).  Starr cites no authority to support its argument, so we do not further consider the argument.  *Cook*, 158 Wn. App. at 794.

### iii.    Risk of Continued Litigation

Starr appears to argue that the trial court abused its discretion in finding that there was a continued risk of litigation for the breach of fiduciary duty claims because "the settlement of the litigation, including releases and membership buyout, was already effective *before* the Reasonableness Motion was even filed."  Br. of Appellant at 46.  However, as discussed above, Starr ignores the portion of the 2021 Settlement Agreement that expressly states that "the foregoing releases shall not operate to release any claims that the [plaintiffs]: . . .  may have arising out of or related to the Breach of Fiduciary Duty Claims Judgment."  CP at 6757.  Accordingly, this argument fails.

### iv.    Defendant's Ability to Pay

Starr appears to argue the trial court abused its discretion in finding that the sixth *Chaussee* factor weighed in favor of reasonableness because the other Cohen Parties had the ability to pay $26,000,000 in order to settle the plaintiffs' claims.  However, Starr's argument incorrectly

21

assumes that the Estate and other Cohen Parties are the same entity. They are not. Accordingly, this argument fails.

v.      Bad faith, Collusion, or Fraud

Starr argues that the trial court abused its discretion in concluding that the stipulated judgment was not collusive or fraudulent because the structure of the overall 2021 Settlement Agreement showed that the Estate stood to collect from its own wrongdoing. However, as explained above, Starr fails to show bad faith, collusion, or fraud because the insured-tortfeasor (the Estate) does not stand to collect from its own wrongdoing. Again, the other "Cohen Parties" will not collect until *after* they have paid the plaintiffs. Accordingly, this argument fails.

Based on the foregoing, we hold that the trial court did not abuse its discretion in finding the amount of the stipulated judgment reasonable.

III.     PROCEDURAL DUE PROCESS

Starr argues that the trial court violated its procedural due process rights by holding and conducting a reasonableness hearing. We disagree.

A.      Legal Principles

We review claimed due process violations de novo. *Red Oaks Condo. Owners Ass'n v. Sundquist Holdings, Inc.*, 128 Wn. App. 317, 321, 116 P.3d 404 (2005). "To be consistent with due process, notice 'must afford a reasonable time for those interested to make their appearance.'" *Id.* at 324 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950)). Reasonableness is measured by the particular circumstances. *Id.* In this particular context, "[d]ue process is satisfied by notice and an opportunity to intervene in the underlying action." *Bird*, 175 Wn.2d at 774.

22

56027-5-II

RCW 4.22.060 provides that,

> (1) A party prior to entering into a release, covenant not to sue, covenant not to enforce judgment, or similar agreement with a claimant shall give five days' written notice of such intent to all other parties and the court. The court may for good cause authorize a shorter notice period. The notice shall contain a copy of the proposed agreement. *A hearing shall be held on the issue of the reasonableness of the amount to be paid with all parties afforded an opportunity to present evidence.* A determination by the court that the amount to be paid is reasonable must be secured. If an agreement was entered into prior to the filing of the action, a hearing on the issue of the reasonableness of the amount paid at the time it was entered into may be held at any time prior to final judgment upon motion of a party.
>
> The burden of proof regarding the reasonableness of the settlement offer shall be on the party requesting the settlement.

(Emphasis added.)

B.      Starr's Due Process Rights were Not Violated

Starr argues that its procedural due process rights were violated because "[it] was deprived of the opportunity to present any evidence [and] the court never required the [] Estate to present any supporting evidence in the first place, so Starr had nothing to rebut." Br. of Appellant at 39. We disagree.

Here, the record contradicts Starr's argument that it was deprived the opportunity to present evidence on the reasonableness factors. Aside from the fact that its failure to brief the merits was a tactical decision by counsel, which the trial court correctly observed, the trial court *did* permit Starr to argue the *Chaussee* factors at the hearing. Additionally, while the settling parties at the hearing did not argue the factors, they did provide briefing which in turn referenced the record, thus satisfying their burden of proof under RCW 4.22.060(1). The parties also provided Starr with all discovery during the litigation. Therefore, Starr's argument, that it had no evidence to respond to, is plainly incorrect. Accordingly, this argument fails.

Starr also appears to argue that its procedural due process rights were violated because it was not provided a reasonable time to prepare for the reasonableness hearing. We disagree.

23

56027-5-II

In *Red Oaks*, Division One of this court held that six days' notice to the insurer was consistent with due process because the circumstances there showed that it was a reasonable amount of time for the insurer to make an appearance and defend its interests at the reasonableness hearing. 128 Wn. App. at 326. There, the court concluded the following facts showed that the insurer was not deprived of its due process rights:

> [Mutual of Enumclaw Insurance Company (MOE)] was not a stranger to this case. It was notified of the claims against Sundquist almost a year in advance of the hearing, defended Sundquist under a reservation of rights, agreed to the tolling of the statute of limitations, paid for an investigation into the claims, and was aware of ongoing settlement negotiations. It should have been no surprise to MOE that the parties settled quickly once a lawsuit was initiated. Further, the trial court permitted MOE to participate in the reasonableness hearing, but it chose not to.

*Id*. at 326.

Similarly here, Starr was not a stranger to this case. It was notified of the breach of fiduciary duty claims against Cohen well over a year prior to the reasonableness hearing. Starr had been provided all discovery as it was produced. Starr was certainly aware of the ongoing settlement negotiations and even consented to the defendants settling with the plaintiffs without its participation. It should have been no surprise to Starr that the parties settled thereafter. Furthermore, Starr was provided approximately two weeks' advance notice of the reasonableness hearing, which was more time than the insurer was given in *Red Oaks*. And Starr ultimately did participate in the reasonableness hearing. Therefore, the notice to Starr was consistent with due process. Accordingly this argument fails.

24

56027-5-II

CONCLUSION

We affirm the trial court's order finding the amount of the stipulated judgment fair and

reasonable, and its order finding the settlement reasonable

_____

Veljacic, J.

I concur:

_____

Worswick, J.P.T.

25

56027-5-II

PRICE, J. (dissenting) — The majority affirms the trial court, concluding that the covenant judgement between the parties was fair and reasonable. Majority at 25. Fundamental to this conclusion is the majority's comfort with the overall covenant judgment structure, including the assignment to the Cohen Parties of the right to pursue claims against Starr, even though the arrangement is superficially framed to appear to be an assignment to the injured party, Thomsen. I am not so comfortable.

Both parties appear to agree that covenant judgments generally have the three following characteristics: "(1) a stipulated or consent judgment between the plaintiff and insured, (2) a plaintiff's covenant not to execute on that judgment against the insured, and (3) an assignment to the plaintiff of the insured's coverage and bad faith claims against the insurer." *Bird v. Best Plumbing Grp., LLC*, 175 Wn.2d 756, 764-65, 287 P.3d 551 (2012); *Besel v. Viking Ins. Co. of Wis.*, 146 Wn.2d 730, 736-37, 49 P.3d 887 (2002). Among Starr's arguments is the straightforward one that this covenant judgment structure, in which the plaintiff, Thomsen, initially receives an assignment of claims but assigns its rights back to the Cohen Parties, is a sham, and therefore, the trial court should have simply struck the covenant judgment and not undertaken a reasonableness hearing under RCW 4.22.060.

Although the majority acknowledges Starr's argument and labels the assignment "unconventional," it decides not to "consider the argument" because, according to the majority, Starr provides no authority showing the assignment "render[s] the overall structure of the stipulated judgment unreasonable."[10] Majority at 17.

I respect the majority's perspective, but I cannot agree.

---

[10] The majority suggests that even if it did consider Starr's argument about the assignment, it still believes Starr has failed to show the assignment was forbidden by statute or inoperative on public policy grounds.

56027-5-II

Applying the procedures of RCW 4.22.060 to covenant judgments appears to be court-constructed. *See Bird*, 175 Wn.2d at 767. And throughout this construction and application, courts have repeatedly underscored the equitable nature of the proceedings and the overall concern for fraud, collusion, and the necessity for good faith from the parties. *See, e.g.*, *Bird,* 175 Wn.2d at 769 (reasonableness hearings under RCW 4.22.060 are equitable proceedings); *Wood v. Milionis Constr., Inc.*, 198 Wn.2d 105, 122, 492 P.3d 813 (2021) (court review of reasonableness of covenant judgments must be "alert to indicia of fraud, bad faith, or collusion"); *Hamblin v. Castillo-Garcia,* 9 Wn. App. 2d 78, 88-89, 441 P.3d 1283 (2019) (considering the equitable nature of the proceedings, court found "[t]he [Hamblin] agreement's global settlement provision violate[d] the equitable maxim '[a] person is not permitted to profit by his own wrong at the expense of another.' . . . [T]he settlement underlying the covenant judgment must be structured to avoid unjustly enriching either insured or insurer." (footnote omitted) (quoting RESTATEMENT (FIRST) OF RESTITUTION § 3 (1937)); *Besel*, 146 Wn.2d at 738 (a covenant judgment "raises the specter of collusive or fraudulent settlements"). Because these general concerns permeate court review of covenant judgments, it is no leap to apply the principles of good faith to their definitional components and the parties' conduct in entering them. *See, e.g., Waters Edge Homeowners Ass'n v. Water's Edge Assocs.*, 152 Wn. App. 572, 595-96, 216 P.3d 1110 (2009) (trial court did not err when it considered, and was "bothered by," the overall structure of the covenant judgment between setting parties; "that of a joint effort to create, in a nonadversarial atmosphere, a resolution beneficial to both parties, yet highly prejudicial to [the insurer] as intervenor" and found evidence of collusion, including a "kick back" from the plaintiff for a portion of the recovery from the insurer back to the insureds), *review denied*, 168 Wn.2d 1019 (2010).

27

56027-5-II

If these principles are applied here, this "covenant judgment" fails; the assignment component is a sham. Covenant judgments require assignment of claims *to the injured party*, here Thomsen. It is apparent that although Section 2(b)(i) of the settlement agreement purports to make such an assignment, it was deliberately designed to be illusory from the outset. This structure plainly violates the requirement of good faith embodied in this area of law.

The overall settlement of this highly litigated dispute was, no doubt, a complicated undertaking with capable lawyering anticipating and addressing dozens of competing interests. But when the dust settles, the covenant judgment piece is a sham. The trial court erred by not striking the covenant judgment in its entirety and refusing to undertake a reasonableness hearing.

I respectfully dissent.

_____
PRICE, J.